290 P.2d 217

GEM STATE MUTUAL LIFE ASSOCIA-

TION, Inc., a corporation,
Plaintiff-Appellant,

v.

Lucy GRAY, Agnes Gray, and any unknown owners or claimants in and to Policy No. 21792 D–9 issued by the plaintiff on or about the 31st day of July, 1941, on the life of Cecil James Gray, Defendants-Respondents.

No. 8281.

Supreme Court of Idaho.

Nov. 8, 1955.

Rehearing.Denied Dec. 5, 1955.

Carl C. Christensen, Pocatello, for appellant.

Gee & Hargraves, Pocatello, for Agnes Gray.

Anderson & Anderson, Pocatello, for Lucy Gray.

TAYLOR, Chief Justice.

February 7, 1954, at McCammon, at about 1:00 o'clock a. m., insured advised his wife, Agnes Gray, by 'phone that he was extremely drunk and wasn't coming home. On previous occasions when intoxicated he had come home and beaten her. Upon receiving the 'phone call, she barred the doors and sat down to wait. She knew he would be angry and, if drunk, would beat her. About 2:00 o'clock a. m. he came to the house, tried to get in and banged on the door. She told him to go to a hotel, but he refused and kept shouting. She called the town marshal, and deceased, apparently hearing the call, left. He came back about an hour later and again pounded on the door. She told him she had a gun and "was going to use it if I had to." He replied that it was cold outside and that if she didn't let him in he "was going to break the door down."

She asked him if she let him in, would he let her alone. His only reply was that it was awfully cold. She let him in and told him to lie down on the davenport and sleep until he felt better. Without answering, he advanced into the house and toward the stove where he turned and suddenly "jumped at me." She further testified:

"A. Well, when he jumped at me I tried to get out of his way and the gun went off and he said you killed me and I asked him if I had hit him; I didn't know, and he fell on the floor.

\* \* \* \* \* \*

"A. When he jumped at me I jumped to get out of his way and that is when the gun went off.

"Q. You didn't intend to shoot him? A. No, I didn't.

"Q. It was purely accidental that you shot him? A. Yes, it was.

\* \* \* \* \* \*

"Q. He hadn't hit you that night, had he? A. No, he hadn't hit me."

Prior to his marriage to Agnes, with whom the altercation occurred, the insured was married to respondent Lucy Gray. During the period of that marriage, July 31, 1941, the appellant issued a life insurance policy insuring the life of deceased in the amount of $1,498. The respondent, at that time wife of the insured, was named beneficiary. About March 22, 1951, the beneficiary, Lucy Gray, procured a divorce from the insured. The decree did not determine the rights of the parties relative to the insurance, and respondent remained the beneficiary to the time of the death of the insured. December 14, 1951, insured married Agnes Tripp. They were divorced December 11, 1952, and remarried January 2, 1953.

In March, 1954, appellant insurer filed an action against Lucy Gray, beneficiary, Agnes Gray, widow, and unknown owners or claimants of the insurance involved, alleging that both were claimants and that a daughter of the deceased was a possible claimant. It also alleged that it did not have a copy of the policy. With this action the appellant tendered and paid into the court the face amount of the policy—$1,498—and prayed the court to determine who was entitled to the same.

Later the original policy was produced by the widow. One of its standard provisions is: "If death occurs while \* \* \* violating any criminal law, the Association will pay: One-Tenth The Face Amount Of The Certificate."

Appellant then filed an amended complaint, attaching the policy, and alleging that the insured met his death while committing a criminal assault upon his wife, Agnes Gray, for which reason its liability was reduced to $149.80, and withdrew from deposit with the clerk all in excess of that amount.

Agnes Gray answered, alleging that during the time of her marriage to the insured the premiums on the policy were paid from community funds, and claiming the right to

a prorated share in the proceeds of the policy. On the trial she offered no evidence in her own behalf, and has taken no appeal from the judgment adverse to her.

Lucy Gray answered as beneficiary, claiming the full amount of the policy. In a cross-complaint she further alleges that on June 10, 1953, the cross-defendant, insurer, issued a supplement to the policy insuring the deceased against death by accident in the additional amount of $1,498, which is also due her as beneficiary. She also alleges demand and refusal of payment, and claims attorney's fees under the statute. Chapter 289, S.L.1951.

In its affirmative defenses to the cross-complaint the insurer by reference incorporates the defensive allegations of its amended complaint and, in reference to the accident supplement, alleges the insured died as the result of an assault committed by him upon his wife; that he "was the aggressor and voluntarily and culpably provoked and engaged in an assault upon his wife and under such circumstances as to charge him with reasonable anticipation that his aggression would be met with such force or resistance as to put him in danger of death or bodily harm. That he knew that his wife had in her possession a loaded gun, and that he had been warned not to seek to molest her, but that disregarding such knowledge and such warning, he did deliberately expose himself to danger by his own voluntary and intentional acts and conduct," and that his death was "not produced by accidental means within the meaning of the accidental death supplement, but were the natural and probable consequences of his own voluntary acts."

Thus by the cross-complaint and the answer thereto, two principal issues were raised. First, did death occur while the insured was violating a criminal law? Second, was the death accidental? Upon trial a jury was impanelled, but the trial court submitted only the first of these issues to the jury. In answer to a special interrogatory submitted, the jury returned its verdict "That Cecil Gray did not make a criminal assault upon Agnes Gray immediately prior to his death."

Appellant asserts in its brief that the court limited the issues submitted to the jury without consulting counsel. Nothing appears in the transcript to indicate a waiver of trial by jury on all issues. § R10–301 I.C. As finally developed by the pleadings, this is an action at law by the beneficiary upon an insurance contract in which the insurer alleges that two of the conditions of the policy were breached by the insured. Farmer v. Loofbourrow, 75 Idaho 88, 267 P.2d 113, 41 A.L.R.2d 774; Cooper v. Wesco Builders, 76 Idaho 278, 281 P.2d 669; Const. Art. 1, § 7. Appellant having produced competent and substantial evidence in support of both defenses, both should have been submitted to the jury. Jones v. City of Caldwell, 20 Idaho 5, 116 P. 110, 48 L.R.A.,N.S., 119; Packard v. O'Neil, 45 Idaho 427, 262 P. 881, 56 A.L.R.

317; *Addy* v. *Stewart*, 69 Idaho 357, 207 P.2d 498; *Lemman* v. *McManus*, 71 Idaho 467, 233 P.2d 410; *Cook* v. *Saltzer*, 74 Idaho 97, 257 P.2d 228.

After the verdict, appellant made demand for findings of fact and conclusions of law and objected to the entry of judgment until such findings and conclusions were made. When findings were submitted by counsel for respondent, appellant filed objections, among which was the specific objection that no verdict had been rendered, and no finding was contained in those proposed, on the issue raised by its second affirmative defense: namely, that the death of the insured was not accidental. The findings ultimately entered include a finding of accidental death. Judgment was entered in favor of the beneficiary for the sum of $1,498 on the original policy, $1,498 on the supplement, and $500 attorney's fee for the prosecution of the action on the supplement.

■ Respondent contends that appellant's original complaint and deposit in court of the full amount of the original policy is a judicial admission of liability, and a waiver or estoppel of any defense thereto. Appellant's evidence on this issue was not contradicted. It is to the effect that at the time the original complaint was filed and the amount of the policy deposited in court, appellant did not have before it a correct copy of the insurance policy, and did not know the circumstances of insured's death or the facts affecting its liability.

The record does not indicate respondent was injured or changed her position in reliance upon the alleged waiver.

"Where insurer, with knowledge of the breach of a condition, pays the amount of loss ascertained by appraisers into court on an interpleader, or pays or partially pays any loss under the policy, it recognizes the policy as still in existence and must be considered to have waived its defense, * * *. The rule does not apply where payment was procured by fraudulent representation by insured, or where the payment was made by insurer in ignorance of circumstances affecting its liability." 45 C.J.S., Insurance, § 743.

No waiver or estoppel is shown here. Bower & Kaufman v. Bothwell, 152 Md. 392, 136 A. 892, 52 A.L.R. 158; Redeman v. Preferred Acc. Ins. Co., 215 Wis. 321, 254 N.W. 515; Nussbaum v. General Acc., Fire & Life, etc., 238 Ky. 348, 38 S.W.2d 1.

It being necessary to reverse and send the cause back for a new trial, we shall consider other issues which are likely to arise again on the new trial. § 1–205 I.C.

■ Appellant assigns the ruling of the court excluding evidence of acts and conduct of the deceased on previous occasions when he had come home intoxicated and committed assaults upon his wife. The specific question to which objection was sustained was as to the number of times he had assaulted her. Perhaps an offer of proof should have been made to present

the question properly to the trial court. The question which will likely arise upon a new trial is the admissibility of previous similar acts and conduct. Appellant urges that deceased knew or reasonably should have anticipated that his conduct on the occasion in question would put him in danger of death or bodily harm, and that such was the natural and probable consequence of his acts, and that, therefore, his death was not accidental. Obviously, evidence as to acts, conduct and the consequences thereof on previous occasions would shed light on his knowledge, intent and anticipation on the occasion of his death. Respondent calls attention to the testimony of Agnes Gray that she did not intend to kill the insured, and that the gun was discharged by accident. Assuming her intent to be relevant, the facts of previous encounters would be admissible thereon. Evidence as to previous assaults should have been admitted. Wagman v. Knoor, 69 Colo. 468, 195 P. 1034; Akins v. Illinois Bankers Life Assur. Co., 166 Kan. 648, 203 P.2d 180; Shields v. Prudential Ins. Co. of Am., 6 N.J. 517, 79 A.2d 297, 26 A.L.R.2d 392, Annotation 399; 32 C.J.S., Evidence, §§ 580, 581, 582.

■ Appellant contends the accidental death supplement issued in 1953 became a part of the original contract and dates back to July 31, 1941, and, therefore, the contract having been entered into prior to the enactment of Chapter 289 S.L.1951, no attorney's fee could be allowed, on authority of Pen-

rose v. Commercial Travelers Ins. Co., 75 Idaho 524, 275 P.2d 969. It is true the supplement became a part of the original contract of insurance. Narver v. California State Life Ins. Co., 211 Cal. 176, 294 P. 393, 71 A.L.R. 1374; 44 C.J.S., Insurance, § 300. However, it provides additional insurance separate and apart from that provided by the original policy, for which a separate and additional consideration was agreed upon and paid. Thus, it is in effect a severable and independent part of the original contract. The situation is analogous to cases in which separate or additional insurance is given to a vendor or mortgagee upon an additional or independent consideration. In such cases it becomes a separate contract. American Central Ins. Co. v. Weller, 106 Or. 494, 212 P. 803; Pennsylvania Fire Ins. Co. v. Johnson, 28 Ariz. 448, 237 P. 634; Prudential Ins. Co. of America v. Paris Mut. Fire Ins. Co., 213 Wis. 63, 250 N.W. 851. The statute is applicable and attorney's fee may be properly allowed.

■ The court taxed costs against appellant. No cost bill having been served or filed by respondent, no costs should have been allowed. § 12–113 I.C.; Steensland v. Hess, 25 Idaho 181, 136 P. 1124.

■ Interest was allowed on the amounts due under the policy and supplement from date of insured's death. The policy provides:

"6–G It is understood that upon the death of a member the Beneficiary shall

164

within thirty days file with the Association due proof of death and claim."

Respondent's statement of death and claim is dated April 22, 1954. Interest should not have been allowed prior to the filing of such proof and claim with the company. § 27–1904 I.C.; Ash v. Mutual Life Ins. Co. of N. Y., 170 Misc. 227, 9 N.Y.S.2d 32, affirmed 283 N.Y. 718, 28 N.E.2d 723; 46 C.J.S., Insurance, § 1395.

Judgment reversed and cause remanded for new trial.

Costs to appellant.

KEETON, PORTER, ANDERSON and SMITH, JJ., concur.