See also 77 Idaho 157, 290 P.2d 217.

311 P.2d 753

**GEM STATE MUTUAL LIFE ASSOCIATION, a corporation, Plaintiff-Appellant,**

**v.**

**Lucy GRAY, Agnes Gray, and any unknown owners or claimants in and to Policy No. 21792 D–9, issued by the plaintiff on or about the 31st day of July, 1941, on the life of Cecil James Gray, Defendants-Respondents.**

**No. 8510.**

Supreme Court of Idaho.

May 28, 1957.

Carl C. Christensen, Pocatello, for appellant.

Anderson & Anderson, Pocatello, for Lucy Gray.

Gee & Hargraves, Pocatello, for Agnes Gray.

**PORTER, Justice.**

On February 7, 1954, Cecil James Gray and his wife, Agnes Gray, were living in McCammon, Idaho. At about 1 o'clock a. m. he telephoned from downtown to his wife at their home and told her he was drunk and was not coming home. At about 2 o'clock a. m. Mr. Gray came to the home but his wife would not let him in as on former occasions when he was drunk he had struck and severely beaten her. Gray then got in his pick-up truck and started towards Pocatello.

About one hour later Gray came back to the home. At first his wife would not let him in the house but finally told him he could come in if he would let her alone.

On the morning of February 6th Gray had brought his hunting rifle from his automobile and set it in the corner of the room. After Mrs. Gray opened the door to admit her husband she grabbed this gun. Mrs. Gray asked her husband to go lie down on the couch and go to sleep. He stood by the stove for a minute and suddenly turned and jumped at Mrs. Gray. When he jumped at Mrs. Gray she turned and jumped to get out of his way and the gun was accidentally discharged. The bullet from the rifle struck Gray and inflicted a mortal wound.

At the time of his death, Mr. Gray was the owner of a life insurance policy issued by the appellant. The indemnity named in the policy was $1,498 and the named beneficiary was Lucy Gray, the divorced wife of Gray to whom he was married prior to his marriage to Agnes Gray. In connection with this policy, Mr. Gray also owned an Additional Accidental Death Supplement to the policy providing for the payment of an additional indemnity of $1,498 in case of accidental death. Appellant brought this action to determine the beneficiaries entitled to the $1,498 indemnity provided for in the original policy, and paid such sum into court. Thereafter, appellant withdrew all but $149.80 of such deposit, and amended its complaint to show liability only for ten percent of the face of the policy. Respondent, Lucy Gray, filed her answer and cross-complaint claiming the entire $1,498 on the original policy

and an additional $1,498 on the Additional Accidental Death Supplement.

The first trial of the cause resulted in a judgment favorable to respondent, Lucy Gray. On appeal to this court, the judgment was reversed and the cause returned to the trial court for new trial. Gem State Mutual Life Association v. Gray, 77 Idaho 157, 290 P.2d 217. Upon the second trial of the cause both parties moved for a directed verdict and thereupon the court dismissed the jury and the cause was submitted to the court for decision. The trial court made findings of fact and conclusions of law favorable to respondent, Lucy Gray, and entered judgment in her favor for $1,498 on the original policy and $1,498 on the Additional Accidental Death Supplement together with the interest on such sums, attorney's fees and costs. From such judgment appellant has appealed to this court.

Agnes Gray and her counsel during the course of the trial withdrew from the trial of the cause and Agnes Gray claims no rights in the subject matter of this litigation.

The original insurance policy contains the following provision:

"6–A If death occurs while in military or naval service, or insurrection, in time of war or rebellion, or while violating any criminal law, the Association will pay: One-Tenth the Face Amount of the Certificate."

The Additional Accidental Death Supplement contains the following provision:

"If a member named hereon meets with an accidental bodily injury which, independently and exclusively of sickness and all other causes, results in the death of the Member within 90 days from the date of the accident and while this contract is in full force and effect, the Association will pay the Maximum Amount as listed above in addition to the Face Amount as provided in this policy."

The first two specifications of error made by appellant read as follows:

"I

"The Court erred in finding that the death of Cecil Gray was accidental 'Independent and exclusive of sickness and all other causes,' and the said finding (No. 10) is contrary to the evidence and without evidence to support it.

"II

"The Court erred in finding that at the time of the death of Cecil James Gray he was not committing assault upon the said Agnes Gray, and that he was not violating any criminal law within the terms of the Policy (Finding No. 11), and that said finding is contrary to the evidence and without evidence to support it."

The evidence in the first trial of this cause on the questions raised by these two specifications of error was substantially the same as the evidence at the second trial. Upon the first appeal of this cause (Gem State Mutual Life Association v. Gray, supra) we held that the question of whether Cecil James Gray, at the time of his death, was committing an assault upon Agnes Gray and was violating the criminal law within the terms of the insurance policy, was a question for the jury, and that the trial court properly submitted the same to the jury. We further held that the question of whether the death of Cecil James Gray was accidental, independent and exclusive of sickness and all other causes, was likewise a question for the jury (O'Neil v. New York Life Insurance Co., 65 Idaho 722, 152 P.2d 707) and that it was error for the trial court not to submit such question to the jury for finding thereon. The trial court in the second trial of the cause was the trier of the facts and the foregoing questions were properly before it for findings thereon.

The opinion of this court in the first appeal fairly summarizes the evidence in connection with these two questions. We consider it unnecessary to repeat such summarization or to again cite the authorities set out in the opinion on the first appeal. The evidence in this cause is deemed sufficient to support the challenged findings of the trial court.

Specification of Error No. VI reads as follows:

"The Court erred in refusing to admit the evidence of the State Officer, James W. Hager, to the effect that Cecil Gray expressed an intention to go home and beat up his wife."

Officer Hager testified that the decedent on the morning of February 7th entered the checking station occupied by Hager and that they had a conversation.. The transcript then shows the following:

"Q. Can you give us in substance and effect what the conversation was?

"Mr. Walter Anderson: We object to this as incompetent, irrelevant and immaterial and hearsay and inadmissible for any purpose and we have some authority on that point.

"Mr. Christensen: Well, it refers to the trouble which these parties had.

"The Court: Is this part of the res gestae?

"Mr. Christensen: Yes.

"The Court: You haven't laid the foundation for it yet as a part of the res gestae.

"Mr. Christensen: Well, he said it was the early morning. It couldn't have occurred after the man died, and that he was home about two o'clock and it would have to occur between midnight and two o'clock, and it would

have reference to what transpired later."

Later after the cause had been taken from the jury, appellant made the following offer of proof:

"In this case the plaintiff offers to prove by the testimony of the witness, James W. Hager, that the deceased, Cecil Gray, came to the checking station between midnight and the time that, of his death, the exact time not being known by the witness, on the 7th day of February, 1954, and at that time he had a very noticeable odor of alcohol on his breath; that he drove up in a car and came in and had a conversation with Mr. Hager; that during that conversation he said he was having a little trouble with his wife, and he further said that the old lady said she would shoot me if I came home, and I will,—I think I will go home and see if she will do it. And later on he made a statement to Officer Hager that he was going to have to go home and work his wife over, or that in substance and effect he said he was going home and beat the Hell out of his wife. I believe that is all of the testimony that we have that we deem to be material.

"Mr. Walter Anderson: To which offer we object as being incompetent, irrelevant and immaterial and not in any way binding on the beneficiary, Lucy Gray, of the insurance policy.

"The Court: That portion of the offer as to the appearance driving his truck may be admitted but the testimony as to the conversation is not a part of the res gestae and comes under the hearsay rule and is refused."

It appears that the evidence of Officer Hager as to his conversation with decedent was offered by appellant as a part of the res gestae. The admission of evidence as part of the res gestae is left largely to the discretion of the trial court. Towne v. Northwestern Mutual Life Ins. Co., 58 Idaho 83, 70 P.2d 364; State v. Neil, 58 Idaho 359, 74 P.2d 586. The trial court did not abuse its discretion in holding that such evidence was not admissible as part of the res gestae.

Appellant now argues that the conversation should have been admitted on the basis of its showing the intention of decedent. The ruling of the trial court that such evidence was not admissible as part of the res gestae did not constitute reversible error although such evidence may have been admissible on the ground of showing intention. White v. Larsen & Shafer, 51 Idaho 187, 3 P.2d 994; 4 C.J.S. Appeal and Error § 291, p. 582.

The other specifications of error set out in appellant's brief are based upon the questions raised by Specifications of Error Nos.

I and II and require no further discussion. The judgment of the trial court is affirmed. Costs awarded to respondent, Lucy Gray.

KEETON, C. J., TAYLOR and SMITH, JJ., and BECKWITH, District Judge, concur.

McQUADE, J., not participating.