333 P.2d 1008

Gail BARRY, Plaintiff-Respondent,

v.

ARROW TRANSPORTATION COMPANY, a Corporation, and Dale Simpson, Defendants-Appellants.

No. 8662.

Supreme Court of Idaho.

Dec. 12, 1958.

Rehearing Denied Jan. 26, 1959.

448

Bandelin & Cogswell, Sandpoint, for appellants.

Greene & Hunt, Sandpoint, for respondent.

TAYLOR, Justice.

On the morning of January 15, 1955, at about 3:00 a. m., plaintiff (respondent) was traveling west on U. S. highway No. 2, going from Sandpoint to Priest River. He was driving his own Pontiac automobile.

Highway maintenance equipment had pushed snow off the road into windrows at the outer edge of the shoulders. The snow remaining on the highway was hard packed, icy and covered with a light skiff of fresh snow. Its condition was described by the witnesses as "very slippery."

At a point just out of, and to the east of, Laclede the road dips into a hollow and rises again before entering Laclede from the east. On coming down into the hollow from the east, plaintiff lost control of his car and it went over the shoulder on the south side of the road opposite to that on which plaintiff had been traveling. It went into the borrow pit head on. As to its position when it came to rest, plaintiff testified the rear end was entirely off the road and off the shoulder. Plaintiff's witness, Forest, who pulled the car out, testified, "I remember the back bumper would be about even with the edge of the shoulder." Plaintiff's witness, Monaghan, state police officer, figuring from the tire marks left where the car had stood, testified that such marks "would have put the rear of the car in the snow *burn* at the edge of the traveled portion of the road * * *; that would be where the snow stopped and the plowed out section began"; and that the car had stood at nearly a right angle to the road.

Upon the trial a blackboard was used, upon which the plaintiff drew a rough draft of the section of highway involved and indicated thereon the position of his car, the wrecker, and the position where he was standing when injured. Other witnesses likewise marked locations upon the blackboard and testified to the relative position of objects indicated thereon. The blackboard was not admitted in evidence and is not before us. Some of the testimony concerning physical facts illustrated thereon is unintelligible from the record before us. We have heretofore condemned such practice. Beneficial Life Ins. Co. v. Wakamatsu, 75 Idaho 232, 270 P.2d 830.

Plaintiff obtained a ride back to Sandpoint. There he employed one, Wayne Forest, and his wrecker to get the car back on the road. Plaintiff rode out in the wrecker with Forest. They proceeded past the car and up the hill on the Laclede side of the hollow, where they turned back and parked the wrecker on the highway opposite the automobile. This occurred about two hours after plaintiff's car had left the road. A light snow was falling, and visibility was poor.

Upon alighting from the wrecker, with the intention of putting out flares, plaintiff and Forest heard the diesel truck and trailer, of defendant (appellant), Arrow Transportation Company, as it approached from the west. They also saw the headlights from the truck as it came over the hill.

The distance from the top of the hill where a driver could see the place where the wrecker stood in the hollow was given by two witnesses as 525 feet and 600 feet, respectively.

Plaintiff testified:

"* * * we heard this truck coming and knew it was going fast and it

was a big rig. So, Mr. Forest got into his wrecker and we knew he couldn't possibly stop at the speed he was going or control it, and he turned out a ways. Wayne Forest got into his wrecker and took off down the highway and I got off the road down in the ditch about fifteen feet behind my car, and I was watching to see whether he got out of the road off in this draw beside the road out of this truck's way."

Plaintiff, standing by the road, was struck by the passing truck or trailer and knocked down into the snow in the borrow pit. He suffered injuries to the right side of his face, right index finger, right side and right leg.

The truck and trailer transport was driven by the defendant (appellant) Simpson and was loaded with gasoline. The combined weight of the outfit was 72,000 pounds and its total length, 60 feet.

Plaintiff brought this action for damages, alleging that defendant Simpson was driving the transport in excess of 55 miles per hour in the nighttime upon an icy and slippery highway and that such excessive speed prevented the driver from maintaining control of the vehicle, and was greater than was reasonable under conditions then and there existing. Excessive speed is the only negligence alleged by plaintiff on the part of defendants.

Defendants in their affirmative defense alleged contributory negligence on the part of the plaintiff in that plaintiff, seeing the lights of the truck and hearing the sound from it, knew it was a large vehicle and, instead of stepping off the highway, remained on the shoulder thereof too close to the path of the oncoming truck, and that he unlawfully left his car standing partly on the shoulder of the highway with its lights turned off.

The jury returned its verdict in favor of the plaintiff in the sum of $30,278.52, upon which judgment was entered. Thereafter, defendants moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. The motion was urged upon the grounds (1) that the verdict was excessive; (2) that there was no showing of negligence on the part of defendants; (3) that the evidence shows contributory negligence on the part of plaintiff in standing on the shoulder of the road and looking in the opposite direction to that from which the truck was approaching, and having an opportunity to remove himself from the shoulder of the road, he did not do so; (4) in allowing his automobile to remain standing on the shoulder of the roadway at night without lights; and (5) error of the court in failing to give defendants' requested instruction No. 33, as follows:

"If the Jury believes from the evidence that a witness has willfully

sworn falsely on the trial as to any matter or thing material to the issues in the case, then the Jury are at liberty to disregard his entire testimony except in so far as he has been corroborated by other credible evidence or by facts and circumstances proved on the trial."

Defendants brought this appeal from the judgment and from the order denying the aforesaid motion.

The assignments of error present the same issues as were presented to the trial court by the defendants' motion for judgment or for a new trial, and in addition error in denying the motion.

On the issue of his contributory negligence, the plaintiff testified, in addition to the testimony quoted above, that, while he waited for the truck to pass, he was not standing on the shoulder of the road, but five or six feet south from the outer edge of the shoulder and about 15 feet east of, and approximately opposite the center of, his own car. That position would place him on the opposite side of his car from that toward which the truck was approaching. He further testified that as he stood there he was looking in the opposite direction toward Sandpoint, watching the wrecker to see if the driver would get it out of the path of the truck; that he did not remember turning toward the truck, but must have done so, since he

was struck on the right side; and that in passing his car the truck or trailer had creased the rear fender and trunk, leaving a mark about a half inch deep.

A written statement, made and signed by the plaintiff on the day of the accident, is contradictory of his testimony in two particulars. In that statement (defendants' exhibit No. 1) he said:

"I was on the south shoulder of the road standing in deep snow a few feed east of the rear end of my car."

On the trial he testified that he was (1) not on the shoulder of the road, but five or six feet farther down into the borrow pit, and (2) he was 15 feet east of the center of his car. This contradictory testimony and impeachment is the basis upon which appellants urge error in the court's refusal to give their requested instruction No. 33.

Defendants, in their affirmative answer, upon the trial, and in their motion for new trial, urged negligence on the part of the plaintiff in standing on the shoulder of the road, in a position of apparent danger, knowing that a "big rig" was approaching down the slope a short distance from him; that the road was slippery; and that the driver would be unable to stop or control the vehicle. Therefore, the issue as to where plaintiff stood was very material. Moreover, the physical facts are in conflict with his testimony on this

point. If he had stood where he testified he did, in order to strike him, the approaching truck necessarily would have had to overrun his automobile. Instead, it merely creased the rear fender and trunk. No witness testified that the impact was sufficient to, or did, move the car. On this point, on cross-examination, plaintiff testified:

"Q. Well, can you say how far south you were from the edge of your car? A. I would have been probably been about center.

"Q. You would be about center? A. Approximately, yes.

"Q. And yet this truck came by and only creased your fender, then came over to the center of the car and hit you? A. Yes.

"Q. As a matter of fact, Mr. Barry, you were standing on the shoulder, were you not? A. No, I was not standing on the shoulder."

From this it appears that the jury could have applied the rule of law stated in defendants' requested instruction No. 33. The refusal of this instruction was therefore error. State v. Boyles, 34 Idaho 283, 200 P. 125; State v. Farnsworth, 51 Idaho 768, 10 P.2d 295; Judd v. Oregon Short Line R. R. Co., 55 Idaho 461, 44 P.2d 291; In re Stone's Estate, 78 Idaho 632, 308 P.2d 597; Larsen v. Webb, 332 Mo. 370, 58 S.W.2d 967, 90 A.L.R. 67.

In his instructions to the jury the trial judge specifically submitted the issue as to plaintiff's negligence in losing control of his car and allowing it to go into the borrow pit (though not pleaded or put in issue by evidence), and the issue as to his negligence in leaving his car in that position without lights. The only other instruction as to plaintiff's negligence was general in nature (instruction No. 15). Thus the court did not specifically submit the issue of plaintiff's negligence in voluntarily placing himself in a position of danger on the shoulder of the road, and looking in the opposite direction to that from which the truck was approaching. This was the most important element of the defense of contributory negligence. Defendants requested an instruction on this issue. (Defendants' No. 18.) Though its refusal is not assigned as error, its omission, in view of specific instructions on other elements, would tend to divert the attention of the jury from this issue, or minimize its importance, and with it the importance of the contradictory and impeaching evidence against plaintiff.

The truck driver testified that he complied with the speed limit of 35 miles per hour through Laclede; that he had just started to "wind up again" and was going between 35 and 38 miles per hour when he came to the crest of the hill where he observed the wrecker at the bottom of the little hollow sitting in the middle of the

**454**

road; that he saw no other car or person; that in order to avoid hitting the wrecker or jackknifing his transport, he pulled over to the right side of the road, putting the right wheels in the snow in order to slow down; that in the meantime Forest jumped in the wrecker and pulled it ahead and to the right; that he then passed the wrecker on the left and stopped about 60 feet ahead of it and on the right side of the road; that the truck and trailer were equipped with airbrakes; and that he had not applied the brakes to full capacity for fear that might cause the outfit to jackknife due to the condition of the road. No other witness testified to the speed of the tanker except the plaintiff, who said only that it was going fast.

■ Plaintiff's evidence tends to show that defendant Simpson, driver of the tanker, was confronted by a sudden peril, or imminent and impending danger, and that plaintiff believed defendant would be unable to stop or control the vehicle because of excessive speed and the slippery condition of the highway. If the jury had found that Simpson was not traveling at an excessive speed then it would follow that the situation giving rise to the sudden peril was created entirely by plaintiff and his agent Forest. Thus, defendants were entitled to have the issue as to whether defendant Simpson was confronted by a sudden peril without negligence on his part, and the law, applicable thereto, submitted to the jury. See Stuart v. McVey, 59 Idaho 740, 87 P.2d 446; Garrett Freightlines v. Sell, 63 Idaho 738, 125 P.2d 1020; Havens v. Havens, 266 Wis. 282, 63 N.W. 2d 86, 47 A.L.R.2d 1; 61 C.J.S. Motor Vehicles § 535; 5A Am.Jur., Automobiles and Highway Traffic, § 1099.

■ The failure of the court to submit to the jury the issue and law as to sudden peril is not specifically and separately assigned by appellants. However, it does have a direct bearing upon the issue of negligence on the part of Simpson, and is necessarily involved in the consideration of the sufficiency of the evidence to establish such negligence, which is assigned. Also, it is an issue which is likely to arise upon a new trial. For these reasons we deem it proper to discuss the issue. I.C. § 1-205; County of Bingham v. Woodin, 6 Idaho 284, 55 P. 662; State v. Spencer, 74 Idaho 173, 258 P.2d 1147; Koser v. Hornback, 75 Idaho 24, 265 P.2d 988, 44 A.L.R.2d 1015; Head v. Crone, 76 Idaho 196, 279 P.2d 1064; Gem State Mutual Life Association v. Gray, 77 Idaho 157, 290 P.2d 217.

■ We would hesitate to reverse the judgment, and order denying a new trial, on any one of the errors assigned, standing alone, but when all are considered, a new trial is mandatory.

The judgment and the order denying a new trial are reversed and the cause

is remanded with directions to the trial court to grant a new trial.

Costs to appellants.

KEETON, C. J., PORTER and SMITH, JJ., and CRAMER, D. J., concur.