[Civ. No. 26579. First Dist., Div. One. June 29, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
TOM LESTER PUGH, Defendant and Appellant;
NATIONAL AUTOMOBILE AND CASUALTY INSURANCE
COMPANY, Claimant and Appellant.

242

## COUNSEL

Claude E. Dixon for Defendant and Appellant and for Claimant and Appellant.

Louis P. Bergna, District Attorney, and John Schatz, Assistant District Attorney, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—The defendant and National Automobile and Casualty Company, the surety on his bail bond, have appealed from an order denying the bonding company's motion to set aside the forfeiture of two undertakings posted by the bonding company.[1]

Preliminarily, the appellants contend, for the first time on appeal, that the first of two bonds posted by the company was exonerated in connection

---

[1] An order refusing to set aside forfeiture of bail is appealable as a final judgment in a collateral proceeding growing out of the action. (*Newman* v. *Superior Court* (1967) 67 Cal.2d 620, 622 [63 Cal.Rptr. 284, 432 P.2d 972]; *People* v. *Durbin* (1966) 64 Cal.2d 474, 476 [50 Cal.Rptr. 657, 413 P.2d 433]; *People* v. *Wilcox* (1960) 53 Cal.2d 651, 654-655 [2 Cal.Rptr. 754, 349 P.2d 522, 78 A.L.R.2d 1174]; *People* v. *United Bonding Ins. Co.* (1969) 272 Cal.App.2d 441, 442 [77 Cal.Rptr. 310]; *People* v. *Rolley* (1963) 223 Cal.App.2d 639, 640 [35 Cal.Rptr. 803]; *People* v. *Meidell* (1963) 220 Cal.App.2d 105, 107 [33 Cal.Rptr. 564].) It is noted, however, that the law contemplates a summary judgment against the surety when the forfeiture is not set aside. (Pen. Code, § 1306.) As a consent judgment, it is not appealable (see *People* v. *National Auto. & Cas. Co.* (1966) 242 Cal.App.2d 150, 152, fn. 3 [51 Cal.Rptr. 212], and accompanying text). The record furnished this court reflects that such a judgment was entered (October 3, 1967) after the notice of appeal was filed (August 7, 1967), but before all proceedings for the preparation of the record on appeal were completed.

The purported appeal of the defendant must be dismissed. The motion was interposed on behalf of the bonding company and the bondsman. At the hearing the attorney after questioning by the court indicated that he represented the company itself. The order has no reference to the defendant. He is, therefore, not a party of record to this proceeding. (See *People* v. *United Bonding Ins. Co., supra,* 272 Cal. App.2d 441, 442; and cf. *People* v. *Meidell, supra,* 220 Cal.App.2d 105, 106-107.)

with earlier proceedings in which a forfeiture of that undertaking was set aside. From the record it appears that no such exoneration was ever ordered, and that the bonding company acknowledged throughout the present proceedings in the trial court that both bonds were involved. On the merits, appellants assert that the court erred in failing to set aside the forfeiture because defendant's detention by civil authorities in the State of Oklahoma furnished grounds for relief as a matter of law, and that the court erred in finding that the defendant's failure to appear was with the connivance of the bonding company through its representative. An examination of the record and the applicable law sustains these contentions. The order denying the bonding company's motion for relief from the forfeiture must be reversed.

The relevant facts are found in the clerk's transcript of the proceedings in the trial court, and reporter's transcripts of proceedings December 9, 1966 in connection with the earlier motion to set aside the forfeiture and exonerate the first bond, of proceedings on March 8, 1967 in connection with defendant's motion for a continuance of his trial, of the proceedings on June 16, 1967 which led to the order under review and which contains the parties' stipulations concerning the facts, and of the proceedings on July 4, 1967 when the court announced the decision that was embodied in the order signed and filed July 18, 1967 from which this appeal has been taken. The facts are set forth below in connection with a review of the applicable principles of law.

*Amount of Bail in Effect*

It was stipulated as follows:

That on or before the date of February 7, 1966, the defendant was released on an appeal bond in the State of Oklahoma, pending the determination of his appeal on a charge in that state of receiving stolen property. During the time that the defendant was on bail from the Oklahoma appeal he came to the State of California and on February 7, 1966 a complaint was filed in the municipal court of the San Jose-Milpitas-Alviso Judicial District, County of Santa Clara, State of California, charging the defendant Pugh and one other, with conspiracy and three counts of burglary. On February 16, 1966 a preliminary examination was held in the municipal court and said defendants were held to answer. On February 17, 1966 the defendant was released on $11,000 bail posted by the National Automobile and Casualty Insurance Company through Frank Baxter, bondsman. On February 18th the district attorney filed the information against the defendant and Sawyer, charging both defendants with the counts heretofore enumerated. Thereafter, on February 18th the defendant Pugh made a

motion under section 995 of the Penal Code to set aside the information, and on March 4th the motion was withdrawn as to counts 1, 2 and 3, and the court denied the motion as to count 4, whereupon both defendants pled not guilty and the case was set for trial April 25, 1966. Said case was continued thereafter to July 18, 1966, for trial. On July 18, 1966, the defendant Pugh failed to appear for trial in the superior court, and the court ordered the $11,000 bail bond forfeited and a bench warrant was issued for his arrest, fixing the bail on the bench warrant at $1,100.[2]

On December 5, 1966 defendant's attorney of record on behalf of the bonding company and the bondsman filed a written "Notice of Motion to Vacate Forfeiture and Exonerate Bail." The clerk's transcript contains an unfilemarked "Affidavit of Non-Collusion" containing only conclusions of law, and executed on September 27, 1966 by the attorney in fact for the bonding company. This affidavit may have been received in support of the motion. With the consent of the People the matter came on for hearing on December 9, 1966. The reporter's transcript shows that the matter was twice called by the clerk and referred to, without protest by the movants' attorney, as a motion for setting aside a bail forfeiture. The attorney represented that the defendant was incarcerated in the Oklahoma State Penitentiary. The deputy district attorney observed, "We know the defendant was in the State Penitentiary at the time he was supposed to appear here, Your Honor." He conceded that the motion was timely. The court stated, "It will be so ordered." The minutes reflect that the court made its order setting aside the bail forfeiture.

The current proceedings were instituted by defendant's attorney of record on behalf of the bonding company and the bondsman by a "Notice of Motion to Vacate Forfeiture and Exonerate Bail" which recites that he will move the court for "an Order vacating and setting aside the order of forfeiture entered on March 20, 1967 on the surety bail bond posted in the above action on behalf of the above-named defendant, in the sum of *$12,100,* and to exonerate the said bond." (Italics in copy in the record.)

At the hearing the attorney observed, in response to inquiry by the court, ". . . the request by myself, Your Honor, was to set aside the forfeiture and exonerate bail. That was a motion I filed with the court. It was my understanding, before Judge Kelly, he did grant the entire request. I later found out, through the clerk's notes and various minutes I read, that the only request that has been granted was to set the forfeiture aside; so the bail was in fact still in effect."

---

[2]On August 8, 1966 the codefendant plead guilty and on September 8, 1966 he was sentenced to state prison on two counts to run concurrently.

The following colloquy then occurred: "[Asst. Dist. Atty.]: Yes. That original forfeiture was set aside only as to the forfeiture. The bail was not exonerated but the forfeiture was set aside and set aside without imposition of any kinds upon the setting aside of forfeiture. The Court: That same $11,000 bond is involved as one forfeiture here? [Asst. Dist. Atty.]: Yes. [Movants' Atty.]: Yes. The Court: Two bonds forfeited on the same date as concerns this motion? [Movants' Atty.]: Yes."

Subsequently, the following appears: "The Court: Then notice of motion by the bondsman and the company was filed, the record reveals, on December 5 of 1966, and counsel agreed that motion to set aside was granted but bail was not exonerated. [Movants' Atty.]: That is correct."

The parties also stipulated to the facts concerning the earlier motion as revealed by the clerk's and reporter's transcripts which have been referred to above. Finally, after the assistant district attorney announced that when the defendant for the second time failed to appear for trial "the court ordered both bail bonds in the total amount now of $12,100 forfeited," the court queried, "That would be the original $11,000 bond and the $1,100 bond on the bench warrant?" The prosecutor stated, "Yes, Your Honor," and the movants' attorney retorted, "So stipulated, Your Honor."

On this record there was no showing that the first bond was ever exonerated. The relief from the forfeiture did not serve to discharge the bond. In fact, on the showing made, it would have been erroneous to exonerate the bond, as distinguished from merely suspending the liability of the surety, while circumstances prevented the defendant's appearance. (*People* v. *Wilcox* (1960) 53 Cal.2d 651, 658 [2 Cal.Rptr. 754, 349 P.2d 522, 78 A.L.R.2d 1174]; and see *People* v. *Hadley* (1967) 257 Cal.App.2d Supp. 871, 877-878 [64 Cal.Rptr. 777].) By the terms of the original bond the bonding company undertook to pay $11,000 if the defendant failed to appear.[3] The court properly ordered it forfeited on defendant's second failure to appear.

---

[3]The bond recites: "Now, the NATIONAL AUTOMOBILE AND CASUALTY INSURANCE Co., a California corporation, hereby untakes [*sic*] that the above-named defendant will appear in the above-named court on the date above set forth to answer the complaint filed against him/her and all duly authorized amendments thereof, in whatever court it may be prosecuted, and will at all times hold him/herself amenable to the orders and process of the court, and, if convicted, will appear for pronouncement of judgment or grant of probation; or, if he/she fails to perform either of these conditions, that the NATIONAL AUTOMOBILE AND CASUALTY INSURANCE Co., a California corporation, will pay to the people of the State of California, the sum of Eleven Thousand and 00/100 dollars ($11,000.00.)." (See Pen. Code, § 1278.)

*Detention by Civil Authorities*

According to the stipulated facts, the following occurred after the original forfeiture was set aside:

Thereafter on February 1, 1967, the defendant Pugh was paroled from the Oklahoma State Prison to the custody of the Sheriff of Santa Clara County and was returned by the Sheriff of the County of Santa Clara at the county's expense to Santa Clara County on the date of February 3, 1967. On February 11, 1967, the defendant Pugh was again released from the Santa Clara County jail when the same said National Automobile Casualty Insurance Company, through Frank Baxter, bondsman, posted the additional bail in the amount of $1,100, which amount had been set as bail on the bench warrant originally issued on July 8, 1956. After the defendant was returned to the State of California from the Oklahoma State Prison in the custody of a deputy sheriff of the County of Santa Clara a trial date was continued to March 6, 1967, and on said date trial was continued to March 20th, and that on all such dates here specified the defendant was present in the superior court of the State of California. On March 8, 1967, said defendant Pugh being present in court, represented by [attorney], and with the knowledge and consent of the bondsman Frank Baxter made a motion for a lengthy continuance of said trial so that said defendant could return to the State of Oklahoma to wind up some personal affairs, and that said motion was denied. On or about the date of February 22, 1967, the defendant Pugh became a fugitive from justice from the State of Alabama, that is Alabama and not Oklahoma, County of DeKalb, on a charge of armed robbery alleged to have been committed in June 1966. On the 19th or 20th of March 1967, the date set for trial, the defendant failed to appear, whereupon the court ordered both bail bonds in the total amount now of $12,100 forfeited. On all the occasions when the defendant returned to the State of Oklahoma from California it was with the full knowledge and consent of the bondsman Frank Baxter. The last time defendant Pugh went to the State of Oklahoma he was thereafter, on or about the date of March 24, 1967, incarcerated by the Oklahoma authorities on the charge of carrying a firearm, a felon carrying a firearm, and revocation of his original parole to the Sheriff of Santa Clara County. Thereafter, to and including the date of the hearing in the trial court (June 16, 1967) he was continuously incarcerated in the Oklahoma State Prison.

The court's minutes reflect that on March 6, 1967, the action against the defendant was regularly set for trial on March 20, 1967, and that on March 8, 1967 the defendant's motion for a continuance was denied. The reporter's transcript reflects that associate counsel for the defendant on March 8th moved the court for a continuance for four weeks after March

20th, the date set for trial. The prosecutor announced that he would consent to an additional two weeks after March 20th and no more. It is not clear from the discussion whether the defendant had urgent business in Oklahoma, whether he wanted more time to attempt to work out a disposition of the California charge or the disposition of some other charge in Oklahoma, or whether he wanted to spend a little time with his wife and two children. The court on learning that both sides were prepared to go to trial on March 20, 1967 denied the continuance.

On these facts the court signed and filed a written order in which it recited, "The bail is not entitled to have the forfeiture set aside as a matter of right because of the defendant's detention by civil authorities in the State of Oklahoma." Support for this position is found in *Taylor* v. *Taintor* (1872.) 83 U.S. (16 Wall.) 366 [21 L.Ed. 287], wherein the court stated, "It is the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of the law." (83 U.S. at p. 369, fn. omitted [21 L.Ed. at p. 289].) After reviewing several types of circumstances the court concluded, "The law which renders the performance impossible, and therefore excuses failure, must be a law operative in the State where the obligation was assumed, and obligatory in its effect upon her authorities. If, after the instrument is executed, the principal is imprisoned in another State for the violation of a criminal law of that State, it will not avail to protect him or his sureties. Such is now the settled rule." (*Id.,* p. 371, fn. omitted [21 L.Ed. at p. 290].)

This rule appears to be widely applied on common law principles. (See Rest., Security, § 207, and comment and illustrations, pp. 559-560; 8 Am.Jur.2d, Bail and Recognizance, § 187, pp. 885-886; 8 C.J.S., Bail, § 77, p. 210 and § 92, pp. 263-264; Annot., Bail-Discharge of Sureties (1949) 4 A.L.R.2d 440-446-449.) In *People* v. *Meyers* (1932) 215 Cal. 115 [8 P.2d 837] the court stated, "The obligation assumed by defendants to produce the accused was absolute, and there is no room for interpretation of the contract. The sole defense was impossibility of performance, and the contention is that performance was prevented by operation of law and by act of the other party to the contract. Since the other party is, in this case, the state, the two excuses become one. There is, of course, no doubt as to the sufficiency of an excuse for performance by sureties upon such grounds. [Citations.]" (215 Cal. at p. 117.) That case involved the action of another county within the state, and the court concluded, "The state, acting through its officers in one county, cannot hold defendants liable for failure to perform, when such performance was delayed, hindered and finally made, for all practical purposes, impossible, by the state acting through its officers in another county." (*Id.,* pp. 119-120.)

In this state the matter of relief from forfeiture is regulated by statute. Prior to 1955 the statute (Pen. Code, § 1305) contained no specification as to what might constitute a satisfactory excuse for the defendant's neglect to appear. In that year the following section was added, "If within 90 days after such entry in the minutes [the fact of defendant's neglect to appear and forfeiture of the bail], it be made to appear to the satisfaction of the court that the defendant is dead or is physically unable, by reason of illness or insanity, or by reason of detention by civil or military authorities, to appear in court at any time during said 90 days, and that the absence of the defendant was not with the connivance of the bail, the court *may* direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just." (Stats. 1955, ch. 1421, § 1, p. 2590, italics added.)[4]

In 1963 (Stats. 1963, ch. 2014, § 1) the statute was amended by changing *"may"* to *"shall."* Since then it has been mandatory for the court to give relief upon such terms as may be just if a timely motion is made and the inability specified by the statute is shown. (*People* v. *Durbin* (1966) 64 Cal.2d 474, 476 [50 Cal.Rptr. 657, 413 P.2d 433]; see *People* v. *Durbin* (1963) 218 Cal.App.2d 851, 854 [32 Cal.Rptr. 573]; and cf. *People* v. *Durbin* (1963) 218 Cal.App.2d 846, 850-851 [32 Cal.Rptr. 569]. See also *People* v. *United Bonding Co.* (1970) 3 Cal.App.3d 868, 870 [84 Cal.Rptr. 66]; *People* v. *United Bonding Co.* (1966) 240 Cal.App.2d 895, 896 [50 Cal.Rptr. 198]; and *People* v. *Rolley* (1963) 223 Cal.App.2d 639, 642 [35 Cal.Rptr. 803].)

In *People* v. *Rolley, supra,* 223 Cal.App.2d 639, the defendant was arrested and was held by federal authorities in New Mexico from a date some 50 days after his failure to appear. It appears to have been assumed that the provision quoted above would apply, and the controversy revolved about whether the detention by civil authorities had to exist for the entire period provided in the statute. The court observed, "The third sentence, insofar as it applies to a defendant detained by civil authority, seems designed to avoid penalizing the bail who has in fact procured a defaulting defendant's arrest, but who is prevented from effecting his immediate return because the arrest-

---

[4]In 1965 the time within which to seek relief from forfeiture of bail was increased from 90 to 180 days (Stats. 1965, ch. 206, § 1, and ch. 1926, § 1); and in 1967 the 180 days was fixed in connection with the mailing of notice of forfeiture (Stats. 1967, ch. 109, § 1, p. 1027.)

In 1969 (Stats. 1969, ch. 1259, § 6, p. 2463) a distinction was drawn between the situation where "the defendant is dead or is otherwise permanently unable to appear in court due to illness, insanity, or detention by civil or military authorities" and where "the defendant is temporarily disabled by reason of illness [etc.]" and "is therefore unable to appear in court at any time during the remainder of such 180 days. . . ." These amendments are prospective, from November 10, 1969, only. (Stats. 1969, ch. 1259, § 10, p. 2465. Cf. *People* v. *Durbin, supra,* 64 Cal.2d 474, 477-479.)

ing authorities detain the defendant beyond the 90-day period. That purpose would be defeated if the prosecution's view were adopted, for the briefest freedom of an absconding defendant, which almost inevitably would continue at least for moments after minute entry of his default, would dispel all interest of the bail in his ultimate arrest and return. The orderly procedure for effecting his return is to locate him and to procure his arrest where found. That course was followed by the bail here, who expended time and effort in securing defendant's arrest in Albuquerque. The circumstance that the arresting authority also had ground to prosecute and detain him should not deprive the bail of all benefits of substantially assuring his ultimate return for trial here." (223 Cal.App.2d at pp. 641-642.) The court upheld an order setting aside the forfeiture of the bail. (See also *People* v. *Durbin, supra,* 64 Cal.2d 474, 479, applying the same sentence of the code section to detention in Tennessee; and *People* v. *United Bonding Ins. Co.* (1969) 272 Cal. App.2d 441, 445-447 [77 Cal.Rptr. 310] which discusses application of the section with respect to a detention in Florida.)

In *People* v. *Hadley* (1967) 257 Cal.App.2d Supp. 871 [64 Cal.Rptr. 777], the People appealed from an order reinstating and exonerating bail after a forfeiture. The order was reversed for failure to give the People notice of the hearing on the motion for relief, but the court also disposed of other issues raised by the parties. In response to the contention that detention by police in another state did not come within the purview of the statute, the court stated, "The terms 'civil' or 'military authorities' are unmodified in the language of the Legislature by any other word or phrase. No ambiguity appears and it is not for this court to rewrite a statute." (257 Cal.App.2d Supp. at p. 880. See also *People* v. *Semecal* (1968) 264 Cal.App.2d Supp. 985, 994-995 [69 Cal.Rptr. 761]; and cf. *People* v. *United Bonding Ins. Co.* (1969) 272 Cal.App.2d 441, 446-447 [77 Cal.Rptr. 310].)

The construction adopted in *People* v. *Hadley* is supported by general principles applicable to bail. ■ "The sole purpose of bail in criminal cases is to ensure the personal attendance of the defendant on the court at all times when his attendance may be lawfully required. [Citation.] There should be no suggestion of revenue to the government, nor punishment to the surety. [Citations.]" (*Sawyer* v. *Barbour* (1956) 142 Cal.App.2d 827, 833 [300 P.2d 187]. See also *People* v. *Durbin, supra,* 64 Cal.2d 474, 477; *In re Newbern* (1961) 55 Cal.2d 500, 504 [11 Cal.Rptr. 547, 360 P.2d 43]; *People* v. *Wilcox* (1960) 53 Cal.2d 651, 656-657 [2 Cal.Rptr. 754, 349 P.2d 522, 78 A.L.R.2d 1174]; *In re Brumback* (1956) 46 Cal.2d 810, 813 [290 P.2d 217]; *People* v. *United Bonding Co.* (1970) 3 Cal.App.3d 868, 870 [84 Cal.Rptr. 66]; *People* v. *United Bonding Ins. Co.,* 240 Cal. App.2d 124, 126 [49 Cal.Rptr. 360]; and *People* v. *Durbin, supra,* 218

Cal.App.2d 846, 850; *People* v. *Semecal, supra,* 264 Cal.App.2d Supp. 985, 992.)

In *People* v. *Rolley, supra,* the court noted "the continuing legislative trend toward broader relief from forfeiture of bail." (223 Cal.App.2d at p. 642. See also *People* v. *United Bonding Ins. Co., supra,* 3 Cal.App.3d 868, 870; *People* v. *Hadley, supra,* 257 Cal.App.2d Supp. 871, 880; and 1969 amendments to Pen. Code, § 1305, fn. 4 above.) It may be noted that there was little purpose in specifying "detention by civil . . . authorities" if it was to mean only civil authorities within the State of California because the law in that regard was clearly set forth in the quotation from *People* v. *Meyers, supra* (215 Cal. at pp. 119-120).

The views expressed in *People* v. *Hadley* are also supported by well reasoned precedents in other jurisdictions. (See *State* v. *Heslin* (1964) 63 Wn.2d 957 [389 P.2d 892, 894-895]; and *Allison* v. *People* (1955) 132 Colo. 156 [286 P.2d 1102, 1104-1106].)

The People further point out that the court's finding should be sustained because the bonding company had the burden of proof to establish a case within the provisions of section 1305. (See *People* v. *United Bonding Ins. Co., supra,* 272 Cal.App.2d 441, 445-446; *People* v. *Niccoli* (1951) 102 Cal.App.2d 814, 819 [228 P.2d 827]; and *People* v. *Hadley, supra,* 257 Cal.App.2d Supp. 871, 877.) ■ The People stipulated that at the time of hearing the defendant was, and continuously since March 24, 1967 had been, incarcerated in the Oklahoma State Prison, and that there was a hold against the defendant placed at the Oklahoma State Prison by the Santa Clara sheriff's office for the purpose of returning him to the State of California at such time as the Oklahoma authorities would release him. They further stipulated, without objection to the hearsay nature of the testimony, that an Oklahoma attorney advised the defendant's local attorney that the defendant had been arrested March 19, 1967. There is no other evidence to contradict the foregoing. Those facts bring the situation within the statute as interpreted above. The existence of the unexecuted detainer indicates that the bonding company could not successfully attempt to secure the release of the defendant for return to this state for the purpose of trial.

■ This conclusion does not mean that the bail should be exonerated. Under the principle stated in *People* v. *Wilcox, supra,* the forfeiture should be set aside, and the liability of the surety should be suspended while the defendant is physically unable to appear in court because of detention by civil authorities. (53 Cal.2d at p. 658. See also *People* v. *Meyers, supra,* 215 Cal. 115, 118; *People* v. *Semecal, supra,* 264 Cal.App.2d Supp. 985, 995; *People* v. *Hadley, supra,* 257 Cal.App.2d Supp. 871, 877-878; *State* v.

*Heslin, supra,* 63 Wn.2d 957 [389 P.2d 892, 895]; and *Allison* v. *People, supra,* 132 Colo. 156 [286 P.2d 1102, 1106].)

The reinstatement of the bail may of course be conditional "upon such terms as may be just." (Pen. Code, § 1305; *People* v. *Durbin, supra,* 64 Cal.2d 474, 479-480; *People* v. *United Bonding Ins. Co., supra,* 240 Cal. App.2d 895, 896-897; *People* v. *United Bonding Ins. Co., supra,* 240 Cal. App.2d 124, 126; *People* v. *Hadley, supra,* 257 Cal.App.2d Supp. 871, 879-880; and *Allison* v. *People, supra,* 132 Colo. 156 [286 P.2d 1102, 1106].) The trial court in fact found that "the People herein sustained actual losses of over $1,100.00 in effecting the re-apprehension of MR. PUGH initially and the People are reasonably likely to sustain an additional $1,000.00 to eventually effectuate the return of the defendant, MR. PUGH, to the County of Santa Clara, State of California, to ultimately stand trial on pending charges."

*Connivance*

The trial court's order also recites "the absence of the defendant PUGH at the time in question was with the connivance of the bail, through its bondsman, within the meaning of section 1305 of the Penal Code." The bonding company stipulated that on all the occasions when the defendant returned to the State of Oklahoma from California it was with the full knowledge and consent of its representative. The question, however, is whether such knowledge and consent amounts to connivance with an absence of the defendant which was admittedly occasioned because he was physically unable to be present by reason of detention by civil authorities.

In *Taylor* v. *Taintor, supra,* the defendant was permitted to go to New York from Connecticut and from the former state he was extradited to Maine. The court stated, "When bail is given, the principle is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner. In *Anonymous,* 6 Mod. 231, it is said: 'The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge.' The rights of the bail in civil and criminal cases are the same. They may doubtless permit him to go beyond the limits of the State within which he is to answer, but it is unwise and imprudent to do so; and if any

evil ensue, they must bear the burden of the consequences, and cannot cast them upon the obligee." (83 U.S. at pp. 371-372, fns. omitted [21 L.Ed. at p. 290].) The decision of four of the seven justices sitting on the case found the sureties at fault because if the defendant had been detained in Connecticut the governor would not have permitted extradition until the local charges had been disposed of, and because they failed to press their right to return of the defendant from New York.

In an opinion, dissenting from a decision that the 1927 amendments to section 1305 required a showing in the conjunctive of excusable neglect and lack of connivance, before a forfeiture could be relieved (Stats. 1927, ch. 735, § 1, p. 1386; and cf. Stats. 1945, ch. 1303, § 1, p. 2454 changing "and" to "or") Justice Shenk gathered the following definitions: "The word 'connivance' as applied to one party (in this instance the surety), presupposes some unlawful or wrongful act or omission on the part of another (here the defaulting defendant), that is, some feigned ignorance or acquiescence or encouragement of the surety in the wrongdoing. All of the definitions of the term 'connivance' are to this effect. *Oakland Bank of Sav.* v. *Wilcox,* 60 Cal. 126, at page 137, approved an instruction that 'connivance is an agreement or consent, directly or indirectly given, that something unlawful shall be done by another.' One may not connive with himself any more than he may conspire with himself. It requires at least two persons to connive. Excusable neglect is incompatible with the existence of connivance and when a defendant has 'connived' there can be no excusable neglect." (*Seaboard Surety Corp.* v. *Municipal Court* (1929) 208 Cal. 596 at pp. 599-600 [283 P. 289]. See also Black's Law Dictionary (4th ed. 1951) p. 375 "connivance"; and Webster's International Dictionary (2d ed. 1939).) The wrongdoing contemplated is not the transitory absence from the state, but the absence from the scheduled court appearance within the state. The acquiescence in the defendant's leaving the state might be negligent, but it could not be an acquiescence to the fact that the defendant would not appear in California on March 20, 1967 because that eventuality did not arise until the defendant was arrested in Oklahoma on March 19th. There is not a scintilla of evidence to show that any representative of the bonding company acquiesced or encouraged the defendant in any illegal conduct which resulted in his arrest, or that they encouraged the authorities to so arrest him.

There is no law which prohibits interstate travel by a person unconditionally released on bail. There was no court order restricting the defendant's peregrinations in this case. In fact it was known to prosecutor and the court that the defendant was going to Oklahoma and had requested but was denied a longer period to visit there. On this record there is no evidence to support the finding that the defendant's absence on March 20, 1967 was with the connivance of the bail.

The appeal of the defendant Pugh is dismissed. The order denying the motion of the bonding company to vacate the bail forfeitured and exonerate the bail is reversed, and the matter is remanded for further proceedings in accordance with the views expressed herein.

Molinari, P. J., and Elkington, J., concurred.