# STATE OF NORTH DAKOTA v. FRANK E. FUNK and August E. Johnson.

(127 N. W. 722.)

**Criminal Law — Bail — Action on Bond — Performance Rendered Impossible by Other Arrest — Defenses.**

1. It is a good defense to an action against the sureties on a bail bond that the state, intermediate the date of such bond and the time when by the terms thereof the principal was obligated to appear in court, caused the arrest of such principal on a criminal charge in another county, and kept him confined in the county jail thereof until after the date designated in the bond for his appearance.

**Criminal Law — Bail — Action on Bond — Impossibility of Performance.**

2. By such arrest and detention of the principal, performance of the conditions of the bail bond was rendered impossible by the state, the obligee in the bond, and therefore the default of the principal in failing to appear is excusable.

Opinion filed June 24, 1910. Rehearing denied September 12, 1910.

Appeal from District Court, McLean county; *W. H. Winchester,* J.

Action by the State against Frank E. Funk and another. Judgment for plaintiff, and defendants appeal.

Reversed, with directions.

*W. S. Lauder* and *J. M. Austin,* for appellants.

Act of God excuses performance of conditions of bail bond. Taylor v. Taintor, 16 Wall. 366, 21 L. ed. 287; Pynes v. State, 45 Ala. 52; McKee v. Com. 7 Ky. L. Rep. 286; People v. Meyer, 9 Misc. 726, 29 N. Y. Supp. 1148, 5 Cyc. Law & Proc. p. 115, and note 42; Conner v. State, 30 Tex. 94.

Detention of accused for crime in another county of the state, when his appearance is due according to the bail bond, exonerates sureties.

Note.—It is a well-established proposition of law, as shown by the authorities in a note in 23 L.R.A.(N.S.) 137, that the sureties in a recognizance will not be liable thereunder for the failure of the principal to appear, if such failure is caused by no fault of the principal. And certainly there could be no justice in holding the surety liable where the principal's default was not only not due to any fault on his part, but was actually caused by the State itself, as in STATE v. FUNK. The question what will excuse the surety from producing the principal is also considered in a note in 99 Am. Dec. 216.

20 N. D.—10.

Com. v. Overby, 80 Ky. 208, 44 Am. Rep. 471; Cooper v. State, 5 Tex. App. 215, 32 Am. Rep. 571; Taintor v. Taylor, 36 Conn. 242, 4 Am. Rep. 58; Belding v. State, 99 Am. Dec. 214, and note, 25 Ark. 315, 4 Am. Rep. 26; Steelman v. Mattix, 38 N. J. L. 247, 20 Am. Rep. 389; Scully v. Kirkpatrick, 79 Pa. 324, 21 Am. Rep. 62; People v. Tubbs, 37 N. Y. 586; People v. Cook, 30 How. Pr. 110; People v. Moore, 4 N. Y. Crim. Rep. 205; Smith v. State, 12 Neb. 309, 11 N. W. 317; People v. Stager, 10 Wend. 431; Re James, 18 Fed. 853; Com. v. Webster, 1 Bush, 616; Smith v. Com. 91 Ky. 588, 16 S. W. 532; State v. Crosby, 114 Ala. 11, 22 So. 110.

Order of forfeiture does not preclude defense. State v. Lockhart, 24 Ga. 420; State v. Woodley, 25 Ga. 235; State v. Bugg, 6 Rob (La.), 63; Miller v. State, 35 Ark. 276.

*J. E. Nelson,* for respondent.

FISK, J. This is an appeal from a judgment of the district court of McLean county. The facts are all stipulated, and are substantially as follows:

At the June, 1906, term of district court in and for McLean county, commencing June, 11, 1906, one Alexander Larron was informed against, charged with the crime of grand larceny. On June 14th he was arraigned, and pleaded not guilty. On his motion a change of venue was taken, and by order of court the action was transferred to Stark county, and Larron was admitted to bail in the sum of $2,000 in each case, there being two cases. On November 19, 1906, Larron, as principal, and defendants as sureties, executed and delivered their undertakings, whereby they jointly and severally undertook and agreed that said Larron should appear and answer such informations at the adjourned September 11, 1906, term of the district court of Stark county, to be held at Dickinson on December 3, 1906, being the next term thereof, and at all times hold himself amenable to the orders and process of the court, and, if convicted, to appear for judgment and render himself in execution thereof, or if he fail to perform either of said conditions that he pay to plaintiff the sum of $2,000 on each of said bonds, which bonds were approved by the clerk and by the acting judge who ordered the release of Larron thereunder. During all times subsequent to June 14, 1906, Larron was held in custody in the county jail of McLean county by the

sheriff thereof under instructions of the court, and on November 23d, and as soon as he was advised by his counsel so to do, under and by virtue of said undertakings, their filing, approval, and the order of the court, the said sheriff advised Larron that he was then and there released and discharged from custody on the charges on which he had been theretofore held, but immediately advised him that he, such sheriff, had been instructed and requested by the sheriff of Rolette county, North Dakota, to arrest and hold him in the event that Larron should be released on bail, and immediately informed him that he was then rearrested and to be held awaiting the arrival of the sheriff of Rolette county, and he was not permitted to leave such jail. At the time the sheriff said to Larron that he was released he further stated: "You are rearrested, and held for the sheriff of Rolette county." Thereafter the sheriff of Rolette county took Larron into his custody, conveying him to Rolette county without his consent or procurement and against his will and over his protest, and against the will and over the protest of these defendants. On December 4, 1906, being the second day of the adjourned September 11, 1906, term of the district court in and for Stark county, said cases were moved for trial. Larron failed to appear according to the conditions of such undertakings, and thereupon the court duly declared such undertakings forfeited. At no time prior to the final adjournment of said court did said Larron or defendants or either of them or anyone in his or their behalf appear and excuse or offer to excuse or explain Larron's failure to appear according to the terms of such undertakings, and at no time thereafter did Larron surrender himself, nor was he surrendered to any court or officer. Said sum of $4,000, the penalty of said undertakings, has not, nor any part thereof, been paid.

On November 30, 1906, and for a long time after December 4, 1906, and after the final adjournment of the said term of court in Stark county, Larron was forcibly and against his will held in custody and imprisonment in the county jail of Rolette county upon an alleged criminal charge under process of law and by the officers of said county; that solely on account of such imprisonment, and not otherwise, the said Larron could not and did not appear for trial in the district court of Stark county in discharge of the obligations of said bonds or undertakings, and that the charge upon which the said Larron was arrested

and held in custody in the said county of Rolette as aforesaid was not alleged to have been committed subsequent to the filing of the bonds aforesaid. While Larron was being held in custody in the county jail of McLean county as aforesaid, and after such bonds had been thus approved and filed, and after the order directing that Larron be discharged from custody had been filed and while the sheriff of McLean county was holding Larron for the sheriff of Rolette county, defendants, as such sureties, demanded of such sheriff that he surrender to them the custody of Larron, which demand was refused. Larron died on or about June 15, 1907, subsequent to the final adjournment of the adjourned September, 1906, term of the district court of Stark county. At the time of his death he was not held in custody but was a fugitive from justice. After the adjournment of such term of court and until the death of said Larron, there was no term of court held in Stark county at which said criminal actions could have been tried, and that such actions remained pending in said court until the time of his death.

On these facts the district court directed the entry of judgment in favor of the state and against these sureties for the amount of such undertakings, together with costs and disbursements. The appeal is from such judgment. Appellants urge three reasons in support of their contention that the judgment should be reversed. These are the following: "First. Larron, for whose appearance in court the bail bond was given, having been, by authority of the state, imprisoned in the county jail of Rolette county at the time fixed for his appearance for trial in the district court of Stark county, and when the order of forfeiture was made, his nonappearance was as matter of law thereby excused, and the appellants were not liable in this action. Second. Larron, never having been discharged from custody or given his liberty, in consideration of the giving and filing of the bail bond, the bond never became operative, and was wholly without consideration, and was therefore null and void, and appellants were not liable thereon. Third. The state, by its officers, having prevented the appellants, sureties on the bail bond, from taking Larron into their personal custody for their own protection, appellants were thereby as matter of law released from all further liability on said bond." We shall notice the first ground only.

The authorities are somewhat in conflict regarding the rights and liabilities of sureties under facts similar to the foregoing. Some courts have upheld the right of the state to enforce forfeitures under similar facts. The cases of State v. Merrihew, 47 Iowa, 112, 29 Am. Rep. 464, is much relied on by respondent's counsel owing to the claimed similarity of our Code provisions with the statute of Iowa. Certain sections of the Iowa statute are very similar to the Code of this state; but the provision of the Iowa law (Code 1873, § 4600), which was deemed controlling in that case, reads as follows: "If, before judgment is entered against the bail, the defendant be surrendered or arrested, the court may, in its discretion, remit the whole or any part of the sum specified in the undertaking." Following the rule announced in State v. Scott, 20 Iowa, 63, the court in the later case seems to have held that, after forfeiture, the only provision of the statute of that state that aids a bail is the section above quoted. We have no such statutory provision. Section 10270, Rev. Codes 1905, cited by respondent's counsel, is widely different. That section provides: "Any surety on such undertaking may be discharged from further liability thereon, at any time before final judgment against him, by surrendering to the court or proper officer the principal in such undertaking, if such principal is a defendant in a criminal action, or if such principal is held as a witness in such action and it has not been tried; or by paying to the clerk of the court the amount specified in such undertaking, with costs as the court may direct." This section is 8460 in the Revised Codes of 1895. An error crept into the 1905 compilation by leaving out in the last line after the word "with" the word "such." It will readily be seen from the Iowa statute that no right was conferred upon the bail to a remission of the whole or any part of the sum specified, but it was made wholly discretionary with the court whether it would remit the whole or any portion thereof. Our statute, on the contrary, seems to confer on any surety the right to be discharged from liability by surrendering the principal at any time before final judgment against such surety on the undertaking. If this is a correct construction of § 10270, then it would seem plain that, if the principal dies before judgment is entered against the surety, the latter's liability would thereby terminate, for it is obvious that by such death the surety is deprived of what otherwise would or might be a

valuable right to him. The facts in the case at bar differ from those in the Iowa case in this respect.

We have reached the conclusion that the judgment of the lower court must be reversed. We do not rest our decision, however, solely upon what we have above stated relative to the construction of § 10270. We are convinced that the weight of authority, both on principle and reasoning, support appellant's contention that when one is bound as bail for another for his appearance in a particular court at a particular time, and the state, before the time stipulated for the appearance, arrests the principal and detains him at another place, thus preventing him from appearing at the time and place stipulated, the bail will be exonerated during such detention. There are many authorities which might be cited in support of this rule. We cite the following: People v. Bartlett, 3 Hill, 570; Com. v. House, 13 Bush, 679; Woods v. State, 51 Tex. Crim. Rep. 595, 103 S. W. 895; State v. Row, 89 Iowa, 581, 57 N. W. 306; People v. Robb, 98 Mich. 397, 57 N. W. 257; Buffington v. Smith, 58 Ga. 341; 3 Am. & Eng. Enc. Law, 2d ed. p. 719. In State v. Row the Iowa court, among other things, said: "It is not to be said, as a legal conclusion, that, had he not been imprisoned at the instance of the state, he would neither have appeared, nor his sureties produced him, when his appearance was called for. The state by placing him in the penitentiary had rendered it absolutely impossible for him to appear, or for the sureties on his bond to produce him. Under such circumstances there could be no default." In Woods v. State, supra, the Texas court tersely said: "It may be that appellant was properly indicted in the county of Hamilton, and in one sense this may have been a fault on his part; still in our view it would constitute, no matter whether he was rightly or wrongly indicted in the other county, a sufficient cause for his exoneration, inasmuch as the very government which held him amenable to the charge in Bosque county had taken jurisdiction of him in Hamilton county." It is true the court in that case was considering a statute which provides that sickness of the principal or some uncontrollable circumstance preventing his appearance at court is a defense against forfeiture of the bail bond, but we think that, in the absence of such a statute, the rule is and should be that uncontrollable circumstances preventing appearance pursuant to the stipulations in the bond should

be sufficient to excuse a forfeiture. The Michigan court in People v. Robb, supra, cited with approval People v. Bartlett, supra, and other cases, and said: "No doubt the arrest and continued detention of the principal by the state on another charge, when such detention makes it impossible for the surety to produce the principal, must operate to discharge the surety from liability." As we understand the brief of respondent's counsel, he does not seriously question the correctness of the rule announced in the majority of the cases, but he contends that under our Code provisions upon the subject these authorities are not in point. We cannot concur in this view.

The judgment appealed from is accordingly reversed, and the district court is directed to dismiss the action. All concur, except MORGAN, Ch. J., not participating.