[S. F. No. 14382. In Bank.—February 26, 1932.]

THE PEOPLE, Appellant, v. CHAS. D. MEYERS et al., Respondents.

Earl Warren, District Attorney, Ralph E. Hoyt, Chief Assistant District Attorney, and James M. Oakley, Deputy District Attorney, for Appellant.

Myron Harris and Leo A. Sullivan for Respondents.

Everett W. Mattoon, County Counsel, and S. V. O. Prichard and Robert A. Cushman, Deputies County Counsel, Los Angeles County, as *Amici Curiae*.

THE COURT.—This is an action brought by the district attorney of Alameda County in the name of the People of the state to recover against sureties the amount of a forfeited bail bond. On June 29, 1926, a complaint was made against Mrs. E. W. Breed in the justice's court of the city of Oakland, charging her with the violation of section 476 of the Penal Code, a felony. She was held to answer on October 11, 1926, and her bail was set at $1,000. Defendants furnished a bail bond in the language of section 1278 of the Penal Code, as it then read, the condition being expressed as follows: "We . . . hereby undertake that . . . Mrs. E. W. Breed . . . will appear and answer the charge above mentioned in whatever court it may be prosecuted, and will at all times render herself amenable to the orders and process of the court, and if convicted will appear for judgment, and tender herself in execution thereof; or if she fails to perform either of these conditions that we will pay to the people of the State of California the sum of One Thousand Dollars. . . . " The bond was approved

and Mrs. Breed was released. As she left the courtroom she was arrested on a similar charge under a warrant issued in San Francisco and placed in jail in that city. On February 19, 1927, she pleaded guilty to this latter charge and was sentenced to imprisonment in the county jail for twelve months. She commenced to serve this term. On March 26, 1927, the judge who had pronounced judgment made an order suspending sentence, and directed that she be placed in the custody of the adult probation officer to be sent to Portland, Oregon. Although instructed to remain away from this state, she returned to San Francisco on May 9, 1927.

The time for arraignment on the Oakland charge was November 8, 1926. On that date the facts of incarceration in San Francisco being presented to the court, the arraignment was continued to November 24, 1926. A number of other continuances were made, some at the request of her counsel, others at the instance of the district attorney. The order on February 24, 1927, recited that Mrs. Breed was confined in the county jail of San Francisco, ''serving a term of one year''. On July 7, 1927, no appearance being made by Mrs. Breed, the court made an order forfeiting the bail, without mentioning any specific default. Thereafter this action was brought by the district attorney. The trial court gave judgment for the defendants on the ground that they ''were prevented by operation of law from having the custody of said prisoner and that by reason thereof are exonerated from their obligation''. The judgment, in our opinion, was proper.

The obligation assumed by defendants to produce the accused was absolute, and there is no room for interpretation of the contract. The sole defense was impossibility of performance, and the contention is that performance was prevented by operation of law and by act of the other party to the contract. Since the other party is, in this case, the state, the two excuses become one. There is, of course, no doubt as to the sufficiency of an excuse for performance by sureties upon such grounds. (*County of Los Angeles* v. *Maga*, 97 Cal. App. 688 [276 Pac. 352]; 3 Williston, Contracts, sec. 1944.)

Certain principles relating to such a situation have been the subject of judicial consideration in this state and else-

where. One is that the *mere arrest and incarceration* of a person released on bail does not exonerate the bail, if the accused is at liberty subsequently and at the time he is required to appear on the first charge. In such case performance by the sureties is possible. (*County of Los Angeles* v. *Maga, supra.*) If, however, he is still *in custody* at the time of the hearing on the first charge, the liability of the sureties is, under some of the authorities, *suspended,* and under others, wholly *exonerated.* But all are substantially in accord on the point that during the custody the surety cannot perform and the bail cannot be forfeited. (See *McDonald* v. *Commonwealth,* 213 Ky. 570 [45 A. L. R. 1034, 281 S. W. 538] ; *State* v. *Funk,* 20 N. D. 145 [Ann. Cas. 1912C, 743, 30 L. R. A. (N. S.) 211, 127 N. W. 722] ; *Belding* v. *State,* 25 Ark. 315 [99 Am. Dec. 214, 4 Am. Rep. 26] ; 3 Williston, Contracts, sec. 1944.) Although our Penal Code, section 1567, permits the bringing of an imprisoned person before a court upon its order, there is nothing in the section nor in the cases construing it to indicate whether a bondsman could avail himself of its provisions. But it is unnecessary to consider the meaning of this statute in view of the facts of the instant case. We are satisfied that on principle and under the better authorities, the incarceration of Mrs. Breed operated to suspend the liability of defendants. Such, apparently, was the view of the court, since no attempt was made to forfeit the bail during the time of her imprisonment.

The effect of the release of Mrs. Breed from custody would normally have been to revive the suspended obligation, and the sureties would thereafter have been required to produce her to answer the first charge. This would undoubtedly have been the case if she had concluded her prescribed term. It likewise appears to be settled that the same duty is placed upon the sureties where the prisoner escapes from custody. (*County of Los Angeles* v. *Maga, supra; McDonald* v. *Commonwealth, supra; State* v. *Crosby,* 114 Ala. 11 [22 South. 110].) But the circumstances of this case are most unusual. Mrs. Breed was sentenced to a twelve months' term, and the San Francisco authorities were notified of the pendency of the proceedings in Oakland and requested to hold her at the conclusion of her sentence for the second trial. Thereafter, without notice of

any kind to the authorities in Oakland or to her bondsmen, the San Francisco authorities released her on an order the validity of which is highly questionable. We may assume, as plaintiff contends, that the order was void, and that, in effect, the prisoner escaped from custody. Still, it must be obvious that this is not the kind of escape which comes within the general rule that the sureties are not discharged. Ordinarily the escape is a deliberate unlawful act on the part of the prisoner, and the sureties take the risk of such acts on the part of the person bailed. But do the sureties also take the risk of connivance in the unlawful act by state authorities? We think not; such a conclusion is beyond all reason, for it amounts to the proposition that the sureties take the risk that the other party to contract may hinder or prevent performance of their obligations. The defense of prevention of performance by act of the creditor cannot be waived, even expressly, in the contract. (Civ. Code, sec. 1511, subd. 1.)

It is true that at the time the bail was forfeited Mrs. Breed was at large and back in San Francisco, and it is argued that performance was not then impossible. This is on the theory that the liability of the sureties was only suspended when she was sent away. Here again the peculiar facts of this case distinguish it from all of the others that have come to our notice. Mrs. Breed was sent out of the state and told to stay out. She was, upon her return, in danger of being picked up and again sent out or imprisoned in San Francisco. She was disobeying the court's order. If the sureties had sought to regain custody they would also have acted in defiance of the court's order, and would have incurred the danger of contempt charges. Certainly this was not a risk assumed by them.

In order to give judgment for plaintiff this court would have to hold that the act of a creditor which deliberately attempts to make performance impossible does not impair the right of that creditor to demand full performance of the other party, where, by the exercise of extraordinary efforts and the disregard of obvious hazards, the latter may later find it possible to perform. We are not prepared to lay down such a rule. The delay and unusual hazards caused by the deliberate act of the creditor is a sufficient excuse.

The state, acting through its officers in one county,

cannot hold defendants liable for failure to perform, when such performance was delayed, hindered and finally made, for all practical purposes, impossible, by the state acting through its officers in another county.

The judgment is affirmed.