Filed 10/1/19; Certified for Publication 10/28/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H044568 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1472577) |
| v. | |
| THE NORTH RIVER INSURANCE COMPANY et al., | |
| Defendants and Appellants. | |

After a criminal defendant failed to appear at his arraignment, the trial court forfeited the bail bond and thereafter denied the bail surety's motion to vacate that forfeiture. On appeal, the surety argues it is entitled to vacatur of the forfeiture and tolling of the appearance period because defendant suffered from a "temporary disability" under Penal Code section 1305, subdivision (e), a statute the surety asserts is applicable where a defendant voluntarily flees the country and is unable to return to the United States. We disagree and affirm the trial court's summary judgment against the surety.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2014, Respondent People of the State of California (the People) filed a misdemeanor complaint against Carlos Eder Hernandez (defendant), charging him with driving under the influence of alcohol in violation of Vehicle Code section 23152, subdivision (a) (count one) and driving in violation of a license restriction related to a driving under the influence offence in violation of Vehicle Code section 14601.2, subdivision (b) (count two). Defendant thereafter entered a contract with appellants The

North River Insurance Company and its bail agent, Bad Boys Bail Bonds (collectively, the surety), under which the surety posted a $35,000 bond for defendant's release from custody. The surety promised to assure defendant's appearance for arraignment in May 2015. The contract between the surety and defendant included an agreement that, if defendant left the court's jurisdiction for any reason, he would "voluntarily return to the state of original jurisdiction" and "waive extradition proceeding [*sic*]."

Prior to the arraignment hearing, defendant's indemnitor notified the surety of her concern defendant would not appear at the hearing. On the day of the arraignment hearing, the indemnitor informed the surety defendant told her he was in Mexico. In November 2015, the surety located defendant in Jaltocan, Mexico.

When defendant did not appear for his scheduled arraignment, the trial court forfeited the bail bond, mailing notice of the forfeiture to the surety on May 15, 2015. Under Penal Code[1] section 1305, subdivision (c), the court was required to vacate the forfeiture if defendant appeared in court, either voluntarily or in custody, within 180 days of the date of forfeiture. Pursuant to section 1305, subdivision (b), which extends time by five days where notice of forfeiture is mailed, that appearance period was scheduled to expire on November 16, 2015. (§ 1305, subd. (b)(1).) On November 12, 2015, the surety filed a motion to extend the appearance period further pursuant to section 1305.4,[2] which the trial court granted, extending the period to June 11, 2016.

On June 10, 2016, the surety filed a motion to vacate forfeiture and exonerate the bond under section 1305, subdivision (f)[3]; alternatively, the surety sought to toll time

[1] All undesignated statutory references are to the Penal Code unless otherwise noted.

[2] "[U]pon a hearing and a showing of good cause," the trial court can extend the appearance period for up to an additional 180 days. (§ 1305.4.)

[3] "In all cases where a defendant is in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture

2

under section 1305, subdivision (e),[4] or extend time under section 1305.4. The motion alleged defendant was located in Mexico and "subject to the 'constructive custody' of the Bail Agent," having both obtained a Mexican passport and applied for a United States visa with the assistance of the surety. The surety further contended the People were placing improper conditions on its request for extradition of defendant from Mexico, including a requirement that the surety pay the costs of extradition, anticipated to be in excess of $50,000. Regarding its alternative request for tolling of the appearance time under section 1305, subdivision (e), the surety argued defendant was in effect detained by United States civil authorities as a result of immigration laws that precluded his reentry into the country without a valid visa. The surety asked the court to toll the time while the defendant and the surety were taking steps to obtain the necessary visa.

The People opposed the surety's motion, first contending they could not extradite defendant from Mexico on a misdemeanor charge, and then asserting he was not detained by civil authorities because he was not deported from the United States but left the country voluntarily.

The trial court denied the motion to exonerate the bond and denied the alternative request for tolling. It found insufficient evidence in the record to determine that the People had "elected to extradite or not extradite" defendant. The court did not explicitly rule on the request to extend time under section 1305.4. The court directed the clerk to

---

and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." (§ 1305, subd. (f).)

[4] "In the case of a temporary disability, the court shall order the tolling of the 180-day period provided in this section during the period of temporary disability, provided that it appears to the satisfaction of the court that the following conditions are met: [¶] (A) The defendant is temporarily disabled by reason of illness, insanity, or detention by military or civil authorities. [¶] (B) Based upon the temporary disability, the defendant is unable to appear in court during the remainder of the 180-day period. [¶] (C) The absence of the defendant is without the connivance of the bail." (§ 1305, subd. (e)(1).)

enter summary judgment against the surety, which it did on September 1, 2016. The surety then filed a motion to set aside the judgment under Code of Civil Procedure section 473, subdivision (d). While that motion was pending, the surety filed notice of this appeal. As a result of the appeal, the trial court determined it did not have jurisdiction to hear the motion to set aside the summary judgment, and denied the motion.

The surety timely filed notice of the appeal of the summary judgment, appealable under Code of Civil Procedure section 904.1, subdivision (a)(1). (Cal. Rules of Court, rule 8.108(c)(2).)

## II. DISCUSSION

The surety raises only one issue on appeal: "Does a fugitive defendant's undocumented immigration status and pending United States visa application establish a 'temporary disability' under [section 1305, subdivision (e)]?"[5] We conclude a defendant's immigration status under these circumstances does not establish a temporary disability under the statute, and affirm the summary judgment.

### A. *Standard of Review and General Legal Principles*

"We review the denial of a surety's motion to vacate forfeiture of a bond for an abuse of discretion. [Citations.] To the extent the trial court's ruling rests on statutory construction or the application of the law to undisputed facts, our review is de novo. [Citations.] To the extent the court's ruling rests upon the application of the law to disputed facts, our review is for substantial evidence. [Citation.]" (*People v. The North River Ins. Co.* (2017) 18 Cal.App.5th 863, 870-871 (*North River*).) In interpreting the statute, "we must, where feasible, strictly construe the statutory language ' " 'in favor of the surety to avoid the harsh results of a forfeiture.' " ' [Citation.]" (*People v. Financial*

_____

[5] In Appellant's Opening Brief, the surety does not address the propriety of the trial court's ruling denying exoneration of the bond under section 1305, subdivision (f), or the court's implied denial of his request for an extension of time under section 1305.4. He thus has waived any challenge to those rulings on appeal. (*Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487, fn. 4.)

4

*Casualty & Surety, Inc.* (2017) 10 Cal.App.5th 369, 379 (*Financial Casualty I*).)
However, this presumption is to be considered against the presumption that "when there is a breach of contract, the bond should be enforced." (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657-658.)

The parties here do not dispute the relevant facts. We therefore review this matter de novo, to determine whether defendant's circumstances constitute a "temporary disability" under section 1305, subdivision (e). That statute requires tolling of the appearance period if the defendant is "temporarily disabled by reason of … *detention by military or civil authorities*," which precludes the defendant from appearing during the 180-day period, and where the absence is "without the connivance of the bail." (§ 1305, subd. (e), italics added.) "[A] person is detained by military or civil authorities if he is subject to a ' " 'restraint [that] prevents his appearance on the date set for that appearance. [Citation.]' " ' [Citations.] A defendant may be restrained from appearing even if he is not *physically* restrained. [Citation.] The animating concern for granting a surety relief when a defendant is restrained is that the restraint makes it impossible for the surety to fulfill its duty to secure the defendant's appearance in court. [Citations.]" (*North River*, *supra*, 18 Cal.App.5th at p. 876.)

However, where a defendant fails to appear because he or she departs the United States, appellate courts have "drawn distinctions between restraints that qualify for relief (either vacatur or tolling)[6] and those that do not. [¶] A surety is entitled to relief when

---

[6] The *North River* court evaluated both subdivisions (d) and (e) of section 1305. While subdivision (e) of section 1305 allows the court to toll the appearance time during the pendency of a "temporary disability," subdivision (d) requires vacation of the order of forfeiture and exoneration of bail where: "(1) [t]he defendant is deceased or otherwise permanently unable to appear in the court due to . . . detention by military or civil authorities. [¶] [and] (2) The absence of the defendant is without the connivance of the bail." (§ 1305, subd. (d).) Given the similar language of subdivisions (d)(1) and (e)(1), opinions discussing detention under section 1305, subdivision (d) are relevant in interpreting subdivision (e).

the defendant is deported to a foreign country, at least where the defendant—following deportation—is also barred from reentering the United States. [Citations.] However, a surety is *not* entitled to relief when the defendant voluntarily departs the United States, seemingly without regard to whether he is barred from reentering the United States. [Citations.]" (*North River*, *supra*, 18 Cal.App.5th at p. 876.) In *North River*, the Court of Appeal, Second District, Division Two, considered why courts of review have drawn this distinction: "How can these two lines of authority peacefully coexist? They differ in one critical respect – namely, the person or entity responsible for setting in motion the chain of events that led to the defendant's inability to reenter the country." (*Id*. at p. 877.) In cases involving defendants who are deported, courts have determined it is a "civil authority," namely the United States immigration authority, who sets in motion the events leading to the reentry bar; in cases involving voluntary flight, it is the defendant who is responsible. (*Ibid*.) While protecting against a defendant's involuntary deportation is not the surety's job, the risk of the defendant's voluntary escape is part of the surety's burden under the bail contract. (*Ibid*.)

The surety asks us to revisit the holding of *North River*, and to conclude there should be no distinction made in determining whether a defendant is "disabled" under section 1305, subdivision (e) based on whether the defendant voluntarily or involuntarily left the United States. In the alternative, the surety contends that *North River* is distinguishable from defendant's case. We decline to revisit the holding of *North River* for reasons we explain below.

### B. A Party Who Voluntarily Departs the United States is not "Detained" Under Section 1305, Subdivision (e)

The surety first contends that when the Court of Appeal interpreted section 1305, subdivision (e) to include a " 'voluntary departure' bar to . . . relief" it inserted a provision that does not exist in the plain language of the statute. It argues the section on its face "provides for tolling relief regardless of whether the defendant voluntarily departs

6

to another jurisdiction," citing *People v. American Surety Insurance Company* (2000) 77 Cal.App.4th 1063 (*American Surety*).  We agree with the surety that the Legislature did not explicitly indicate in section 1305, subdivision (e) whether tolling relief should be granted based on the voluntary or involuntary departure of a defendant from the court's jurisdiction.  However, limitations on the relief offered by the section are implied both by the language of the section itself, as well as a contextual reading of section 1305, subdivision (e) with other provisions in section 1305 that provide relief to the surety.

We note that by conditioning the tolling of the 180-day period on "the case of a temporary disability . . . ," the section's language, particularly the use of the word "disability," conveys the Legislature's intent that the tolling only occur if the defendant's actions are not the cause of his or her non-appearance.  (§ 1305, subd. (e).)  Section 1305, subdivision (e)(1) provides that "[I]n the case of a temporary disability, the court shall order the tolling of the 180-day period . . . provided that it appears to the satisfaction of the court that the following conditions are met:  [¶] (A) The defendant is temporarily disabled by reason of illness, insanity, or detention by military or civil authorities."  (*Ibid*.)  A defendant who is ill or insane qualifies as "disabled" because of circumstances beyond the defendant's agency.  A defendant who is "detained by military or civil authorities" because of deportation enforced by the civil immigration authorities similarly has no control over any resulting exclusion from the country.  As a matter of fairness to the surety, the language of the statute tolls the otherwise mandatory time limits based on the imposition of forces or events beyond the defendant's control.  However, a defendant who leaves the country voluntarily invites or risks such exclusion and thus has triggered the circumstances leading to the bar to reentry.  It would be anomalous to provide relief under this section when the defendant's own actions caused the "disability" that results in exclusion from the United States.

We are similarly persuaded by the reasoning of the court in *North River* that the tolling relief provided by section 1305, subdivision (e) must be limited to those

7

defendants who do not themselves set in motion the events resulting in exclusion from the country, because a contrary result would nullify section 1305, subdivision (g),[7] which addresses the circumstance of a defendant fleeing to a country without an extradition treaty. "[T]he situation presented in this case—that is, a defendant who voluntarily flees and is consequently barred from reentry—is functionally indistinguishable from the situation in which a defendant voluntarily flees the country to a foreign nation that has no extradition treaty with the United States. That is because, in both situations, the defendant has voluntarily fled the state and the surety is powerless to compel the defendant to appear before the court. In the latter situation, the surety is not entitled to relief. [Citations.]" (*North River*, *supra*, 18 Cal.App.5th at pp. 877-878.) The "helplessness" of the surety to retrieve the defendant cannot provide a basis for relief because "we would be effectively nullifying the subdivisions providing that relief is not warranted in a functionally identical situation. Such an implied repeal is disfavored . . . ." (*Id.* at p. 878.) The surety argues that the court in *North River* erred as the situations are not functionally identical because under subdivision (e), the defendant who is denied reentry is detained by "military or civil authorities"; under subdivision (g), the defendant is detained "by the bail agent" in a country without an extradition agreement with the United States. But we fail to see why who detains the defendant demonstrates any meaningful distinction between the two sections here, and the surety provides no explanation of the significance of the purported difference.

---

[7] "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." (§ 1305, subd. (g).)

The surety argues that the *North River* court did not properly interpret the authorities it cites in support of its analysis. Thus, the surety relies on *American Surety* for the proposition that section 1305, subdivision (e) provides tolling relief whether a defendant departs the country voluntarily or involuntarily. In *American Surety*, the defendant was deported to Mexico by federal immigration authorities; the nature of his criminal charges (a drug-related offense) permanently precluded him from returning to the United States. (*American Surety*, *supra*, 77 Cal.App.4th at p. 1065.) The Court of Appeal concluded the defendant's "forced deportation and the federal statutes barring his reentry 'detain[ed]' him, by operation of United States law, from appearing in California court." (*Id*. at p. 1066.) But as the case addressed the circumstance of a forcible deportation of a defendant, the Court of Appeal did not address whether a defendant would be considered "detained" if he left the country voluntarily. However, it noted with approval two earlier cases, *County of Los Angeles v. Ranger Insurance Company* (1996) 48 Cal.App.4th 992 (*Ranger*), and *County of Los Angeles v. Maga* (1929) 97 Cal.App. 688 (*Maga*), wherein the appellate courts held the defendants' voluntary departure from the country precluded vacatur of the bond forfeiture.

The surety correctly points out neither *Ranger* nor *Maga* concerned application of a "detention" disability under section 1305, subdivisions (d) or (e), and thus seemingly asks us to disregard any application either case might have to the instant matter. But we find both cases pertinent to our discussion. In *Ranger*, the defendant voluntarily fled the United States for Cuba after being released on bail. (*Ranger*, *supra*, 48 Cal.App.4th at pp. 994, 996-997.) The insurance company that posted the bail argued the trial court improperly forfeited the bail when the defendant failed to appear for arraignment, as the law in effect at the time restricted travel to Cuba, such that the bail agents could not travel to Cuba to apprehend the defendant and return him to the trial court. (*Id*. at p. 996.) Citing certain case authority, the insurance company contended that the county or state acted to prevent it from fulfilling its contractual duty, thus excusing performance.

9

However, the Court of Appeal, Second District, Division Seven found the argument to be "specious." (*Ibid.*) "[T]he hostile relationship between Cuba and the United States has existed for 30 years, long antedating surety's bond. Cuba was just one of many places which defendant could flee to and be immune from surety's agents. Such risks were present when surety posted bond. Respondent [county] did not *act* to increase those risks." (*Ibid.*, italics in orig.) While the *Ranger* court did not rely on section 1305, subdivisions (d) or (e) in making this ruling, it clearly considered, consistent with the holding in *North River*, what person or entity was responsible for setting in motion the chain of events leading to the defendant's non-appearance, noting that he could have fled to "many places" to insure immunity from return by the bail agents. As it was not the respondent government entity who acted to increase the risk of defendant going somewhere from which he could not be returned, the appellate court upheld forfeiture of the bond.

Similarly, in *Maga*, the Court of Appeal, First District, Division One, considered whether the defendants' voluntary flight to Italy rendered performance of the bail contract impossible, although without reference to any "disability" under section 1305, subdivision (d) or (e).[8] (*Maga, supra*, 97 Cal.App. at pp. 690-692.) Although both defendants were subject to deportation on the charge they had entered the United States in violation of the immigration law, they each left the country of their own accord. (*Id.* at pp. 689-690.)[9] The reviewing court confirmed that sureties could be exonerated, as

---

[8] At the time of the opinion in *Maga* in 1929, section 1305 did not include provisions providing for relief based on legal disability. Rather, it authorized the court to discharge forfeiture if "the defendant and his bail appear[ed] and satisfactorily excuse[d] his neglect, and show[ed] to the satisfaction of the court that the absence of the defendant was not with the connivance of the bail . . . ." (Stats. 1927, ch. 735, § 1, p. 1386; see also Stats. 1905, ch. 539, § 1, p. 701 [the version in effect at the time the *Maga* defendants forfeited bail required that the defendant or bail appear and satisfactorily excuse his neglect].)

[9] The surety argues the appellate court would have ruled differently in *Maga* were it decided today, as current immigration law treats voluntary departure while deportation

10

"performance by them of the condition of the undertaking [requiring the appearance of the defendant in court] may be rendered impossible or excused by an act of God or of the obligee or of the law." (*Id*. at p. 691.) However, because the defendants voluntarily left the jurisdiction, the appellate court found exoneration to be inappropriate, noting "[h]ad this course not been taken their sureties, so far as shown, would not have been prevented from surrendering them." (*Ibid*.) In short, although neither *Maga* or *Ranger* explicitly considered the meaning of a "disability" under section 1305, subdivision (d) or (e), the reasoning of each case is useful to inform our consideration of whether a defendant has been "detained" under those provisions. In each case, it was the defendant who chose to leave the country, rather than the act of a civil authority that set the events in motion; in each case, the Court of Appeal declined to provide relief to the surety.

In further support of its argument that this court should not limit a finding of "disability" under section 1305, subdivision (e) solely to those circumstances where a defendant involuntarily departs the country, the surety cites to *People v. United Bonding* (1970) 12 Cal.App.3d 349 (*United Bonding*), for the proposition that the absence of "the legal qualification to enter the United States" constitutes a "disability." In *United Bonding*, the defendant returned to his home country of Mexico after being released on bail prior to his criminal trial in Santa Clara County. (*Id*. at pp. 351-352, 354.) While in Mexico, he was charged with a felony and subjected to an order restricting him to an area within 50 miles of the town of Magdalena, in the State of Sonora, Mexico; at the border,

---

proceedings are pending as an actual deportation. (8 U.S.C. § 1101(g).) This does not affect our analysis of *Maga*, as there is no evidence in the record on appeal indicating defendant in this action was subject to deportation proceedings when he left to Mexico. Nor do we believe the voluntary departure of an individual who could theoretically be deported equates to detention as argued by the surety. The legal authorities the surety cites (8 C.F.R. § 240.35(b); *El Badrawi v. United States* (D.Conn. 2011) 787 F.Supp.2d 204) govern persons who voluntarily depart the United States in lieu of being subject to deportation proceedings, or prior to completion of such proceedings. (8 U.S.C. § 1299c(a)(1).)

11

the local magistrate refused to allow the defendant entry into the United States because of the order. (*Id*. at p. 352.) The trial court forfeited the bond, finding that the defendant was not in the actual physical custody of a military or civil authority, or confined in any jail or prison. (*Ibid*.) The Court of Appeal, First District, Division Three reversed. On appeal, the People argued the trial court properly forfeited the bond because the defendant, if detained at all, was detained by a foreign nation and not the State of California or another state in the United States. (*Id*. at p. 354.) The appellate court found that detention by a neighbor nation constitutes detention by a military or civil authority under section 1305. (*Ibid*.)

Presumably because it appears the defendant in *United Bonding* voluntarily returned to Mexico, the surety in the instant matter asks us to find that the *United Bonding* defendant's detention by Mexican authorities is akin to the defendant in this case's inability to return to the United States. However, the surety's reliance on the case is misplaced. First, unlike the defendant before us, the defendant in *United Bonding* was in fact detained by a foreign government's authorities. Additionally, nowhere in *United Bonding* does the appellate court discuss whether the defendant would have been permitted to return to the United States if he not been detained by Mexican authorities. There is nothing to suggest he lacked the proper visa or other required documentation. Rather, the facts as set forth in the opinion suggest the Mexican authorities set in motion the events which precluded the *United Bonding* defendant from reentering the United States to appear before the trial court.[10] In contrast, here defendant voluntarily left the United States, at best without knowing or without ascertaining that he had the requisite

---

[10] Similarly, in *People v. Pugh* (1970) 9 Cal.App.3d 241, a case the surety argues the *North River* court "rejected" along with *United Bonding*, the defendant was incarcerated in another state. The Court of Appeal determined this detention by civil authorities mandated relief as a matter of law, such that the appellate court reversed the trial court's finding to the contrary. (*Id*. at p. 244.) This too conforms with the *North River* holding, as it was the act of the other state, not the defendant, that precluded his appearance in the trial court.

visa to return.  The United States government did not force him to leave through deportation proceedings.  Nor did the People take any action to require him to leave.  He was not detained in any fashion by the Mexican government, or by any other civil or military authority.

In short, the surety has not persuaded us that the Court of Appeal's decision in *North River* should have been differently decided, or that we should revisit its reasoning.  "We acknowledge we are not bound by an opinion of another District Court of Appeal, however persuasive it might be.  [Citation.]  We respect stare decisis, however, which serves the important goals of stability in the law and predictability of decision.  Thus, we ordinarily follow the decisions of other districts without good reason to disagree.  [Citations.]"  (*Greyhound Lines, Inc., v. County of Santa Clara* (1986) 187 Cal.App.3d 480, 485.)  Finding no such reason here, we conclude that the surety is not entitled to relief under section 1305, subdivision (e) when the defendant voluntarily departs the United States.

### C. The North River Holding is Not Limited to Defendants Permanently Barred from Reentry

The surety argues that *North River*, a case in which the defendant was permanently barred from reentry into the United States due to drug trafficking charges, should be limited to its facts.  In *North River*, the defendant was charged with possessing and selling, offering to sell, or transporting several controlled substances.  (*North River*, *supra*, 18 Cal.App.5th at pp. 867-868.)  After contracting with the surety to post bond, the defendant left the United States, going first to Mexico, then to Japan.  (*Id*. at p. 868.)  The trial court forfeited his bond when the defendant failed to appear for arraignment.  (*Ibid*.)  The surety filed a motion to vacate the forfeiture or toll the appearance period, citing, among other provisions, section 1305, subdivisions (d) and (e), arguing that the defendant was permanently or temporarily disabled because the pending drug-related charges barred his readmission to the United States under federal immigration law; the

13

trial court denied the motion because there was insufficient proof that the defendant could not return to the country, and, even if he could not, the defendant did not fall under section 1305, subdivisions (d) or (e) because he voluntarily left the country. (*Id*. at pp. 869-870.)

On appeal, as discussed Section II(A), *ante*, the Court of Appeal distinguished between defendants who voluntarily leave the country, and those who are deported, noting that the two lines of authority "peacefully coexist" because "[t]hey differ in one critical respect—namely, the person or entity responsible for setting in motion the chain of events that led to the defendant's inability to reenter the country." (*North River*, *supra*, 18 Cal.App.5th at p. 877.)[11] The appellate court thus concluded, as the surety indicates in Appellant's Opening Brief, that "a defendant is not 'det[ained] by . . . civil authorities' under subdivision (d) or (e) of section 1305 when he voluntarily flees the United States and is barred from reentry by virtue of the pending drug charges against him." (*Id*. at p. 880, fn. omitted.)

Logic does not require us to limit the holding in *North River* solely to those situations where a person is barred from reentering the United States due to drug charges. First, the case itself did not turn on the drug trafficking charges alone as the Court of Appeal cited *two* reasons the defendant could not reenter the United States: the pending

---

[11] In Appellant's Opening Brief, the surety argues there is more than one factual distinction between the cases considered by the *North River* court—*Ranger*, *Maga*, and *People v. Financial Casualty & Surety, Inc.* (2017) 14 Cal.App.5th 127 (*Financial Casualty II*). We have already addressed the application of the *Ranger* and *Maga* holdings to this matter. (See Section II(B) *ante*.) The appellate court in *Financial Casualty II* restated the general rule that a defendant is "detained" under section 1305, subdivision (d) if he has been deported and cannot legally return to the United States. (*Financial Casualty II*, at p. 136.) However, where there was not legally admissible evidence of the defendant's deportation, the Court of Appeal upheld forfeiture of the bond. (*Id*. at pp. 137-138.) This holding is consistent with the statement in *North River* that the critical difference is who set the chain of events in motion. (*North River*, *supra*, 18 Cal.App.5th at pp. 877-878.)

drug charges *and*, similar to the defendant in the instant matter, the fact that he was " 'not in possession of a valid unexpired immigrant visa' (8 U.S.C. § 1182(a)(7)(A)(i)(I))." (*North River*, *supra*, 18 Cal.App.5th at p. 877, italics added.) And, as previously discussed, the court also found the critical element in its decision to be the defendant's contribution to the circumstances precluding reentry into the United States, i.e., that he "set in motion the chain of events leading to [the] bar when he voluntarily fled the country," not that he could not reenter due to pending charges for drug trafficking. (*Id.* at p. 877.) Although the appellate court recognized that " 'the law traditionally disfavors forfeitures of bail . . .' [citations] . . . this presumption does not exist in a vacuum, and is to be balanced against the counterpresumption that 'when there is a breach of this contract, the bond should be enforced.' [Citation.] Here, the surety allowed defendant to voluntarily flee and, as a consequence, breached its contract with the court." (*Id.* at pp. 879-880.)

In the instant matter, the defendant's own actions led to his bar from reentry to the United States because he voluntarily fled the country, presumably knowing or taking the risk that he could not reenter. This is akin to a situation where a defendant, even one who could legally reenter the United States, voluntarily flees to a location from which he is immune from a surety's agents (i.e., Cuba). That risk is "present when [a] surety [posts] bond." (*Ranger*, *supra*, 48 Cal.App.4th at p. 996.) Similarly, when a defendant escapes, whether to a foreign country or another county, the risk of such escape is one of the risks of the bail surety business, and one of the situations the bail surety guarantees against. (*North River*, *supra*, 18 Cal.App.5th at p. 877; see *People v. Meyers* (1932) 215 Cal. 115, 119 (*Meyers*) ["Ordinarily the escape is a deliberate unlawful act on the part of the prisoner, and the sureties take the risk of such acts on the part of the person bailed."].)

The surety asserts that *Meyers* supports its argument that a voluntary departure should not result in forfeiture of a bond. (*Meyers*, *supra*, 215 Cal. 115 at p. 119.) However, as the Supreme Court noted, the facts of *Meyers* were unique. As the

15

defendant left the courtroom after being released on bond from charges in Alameda county, she was arrested on charges under a warrant in San Francisco county, for which she was ultimately sentenced to 12 months in jail. (*Id*. at pp. 116-117.) The judge in San Francisco thereafter issued an order suspending sentence and sent the defendant to Oregon, with instructions to "remain away from this state . . ."; the defendant did not heed those instructions and returned to San Francisco. (*Id*. at p. 117.) When the defendant did not appear for arraignment in Alameda county, the court forfeited the bail, but thereafter granted judgment for the surety "on the ground that '[the surety was] prevented by operation of law from having the custody of said prisoner . . . .' " (*Ibid*.) The Supreme Court affirmed the judgment, as it was the San Francisco county court that released her, without notice to the authorities in Alameda county, thus making it impossible for the surety to fulfill its obligation to take the defendant into custody. (*Id*. at pp. 118-119.) "[I]t must be obvious that this is not the kind of escape which comes within the general rule that the sureties are not discharged. Ordinarily the escape is a deliberate unlawful act on the part of the prisoner, and the sureties take the risk of such acts on the part of the person bailed. But do the sureties also take the risk of connivance in the unlawful act by state authorities? We think not; such a conclusion is beyond all reason, for it amounts to the proposition that the sureties take the risk that the other party to contract [the state authority] may hinder or prevent performance of their obligations. The defense of prevention of performance by act of the creditor cannot be waived, even expressly, in the contract. [Citation.]" (*Id*. at p. 119.) Again, in *Meyers* it was state authorities that prevented the surety's performance of its obligation. In the case before us, it was defendant whose actions subverted the surety's efforts to compel his appearance, a risk that the surety takes on by engaging in the bond business. In short, we are not persuaded that *North River* should be limited to its facts. It is appropriate therefore to affirm the trial court's summary judgment and forfeiture of the bond.

16

### D. *Neither the Unruh Civil Rights Act nor Potential Extradition Treaties With Mexico Affect Our Ruling*

The surety expresses concern that allowing forfeiture based on a defendant's inability to legally return to the United States creates conflict with the Unruh Civil Rights Act (Civ. Code, § 51) as it applies to sureties as insurance providers. The surety argues it is not allowed to consider a person's immigration status when assessing the risk of posting bond; the Unruh Civil Rights Act provides, "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).) Insurance Code section 1861.03, subdivision (a) makes the Unruh Civil Rights Act applicable to the "business of insurance."

As the surety cannot consider a person's immigration status, it contends it has not voluntarily undertaken the risk associated with defendant's immigration status. The only caselaw the surety cites on this point is *Meyers*, contending the involuntary risk associated with a defendant's immigration status is akin to the risk posed to the surety in *Meyers* of having to act in defiance of a court order to regain custody of that defendant. (*Meyers*, *supra*, 215 Cal. at p. 119.) The surety's reliance on *Meyers* fails because the surety is subject to similar risks inherent in the voluntary departure of a defendant to a country from which he or she cannot return—any defendant can flee to a country from which he or she cannot be recovered, whether due to immigration status, laws restricting travel to a country, or lack of an extradition treaty. (See *North River*, *supra*, 18 Cal.App.5th at pp. 877-878; *American Surety*, *supra*, 77 Cal.App.4th at pp. 1065-1066; *Ranger*, *supra*, 48 Cal.App.4th at p. 996.) This is a risk inherent in the bond business, and our ruling does nothing to expose the surety to an additional, unexpected risk.

The surety contends we should not equate this case to one wherein a defendant flees to a country lacking an extradition treaty, as Mexico does have such a treaty with the United States, and the defendant here was voluntarily cooperating in an attempt to return to the United States. Caselaw suggests the potential for extradition does not serve as a basis to toll the appearance period under section 1305, subdivision (e). In both *People v. Western Insurance Company* (2012) 204 Cal.App.4th 1025 (*Western*), and *People v. Seneca Insurance Company* (2010) 189 Cal.App.4th 1075 (*Seneca*), the defendants fled to countries with extradition treaties. (*Western*, at p. 1029; *Seneca*, at pp. 1078-1079.) While awaiting potential extradition, the sureties who posted bond sought equitable tolling of the appearance time. (*Western*, at p. 1032; *Seneca*, at pp. 1078-1079.) The appellate courts upheld the trial courts' entry of summary judgment forfeiting bond, finding that the only basis for tolling was a "temporary disability" under section 1305, subdivision (e). (*Western*, at pp. 1031-1032; *Seneca,* at pp. 1082-1083.) Implicit in these rulings is a finding that potential extradition, in and of itself, does not qualify as a "temporary disability."

In both *Western* and *Seneca*, the surety sought exoneration of the bond under section 1305, subdivision (g) (see fn. 7, *ante*). (*Western*, *supra*, 204 Cal.App.4th at p. 1029; *Seneca*, *supra*, 189 Cal.App.4th at pp. 1078-1079.) The prosecutors in both *Western* and *Seneca* seemingly indicated a desire to extradite the defendants, but did not initiate the extradition process prior to the end of the appearance period. (*Western*, at p. 1029; *Seneca*, at pp. 1078-1079, 1081.) The appellate courts agreed that a delay in extradition did not constitute a basis to exonerate the forfeiture, and/or did not require tolling the appearance period. (*Western*, at pp. 1031-1032; *Seneca,* at p. 1082.) In the instant matter, the surety did not seek relief under section 1305, subdivision (g), but, rather, section 1305, subdivision (f) (see fn. 3, *ante*). The trial court determined the People had not, as of the hearing in July 2016, made an election to extradite or not extradite the defendant.

18

As for defendant's cooperation in attempting to obtain a visa to return to the United States,[12] the surety does not cite any caselaw supporting its argument that this is a factor for the court to consider under section 1305, subdivision (e). While his cooperation is admirable, the fact remains that defendant's voluntary decision to leave the United States without ascertaining whether he had or could obtain the necessary visa or other papers to return here, resulted in the bar to his reentry to this country. We agree with the holding of *North River*: as the defendant was not detained by a civil authority, the trial court properly denied the surety's request under section 1305, subdivision (e) and entered summary judgment.

### III.    DISPOSITION

The summary judgment entered September 1, 2016, is affirmed.

---

[12] The People object to this court considering evidence submitted to the trial court after the appearance period ended on June 11, 2016, including evidence about defendant obtaining a Mexican passport and applying for a visa. The People allege the surety did not submit evidence regarding the passport and visa application until after the appearance period ended. However, in declarations filed on June 10, 2016, the surety's attorney and the investigator working with defendant confirmed his cooperation in trying to apply for the visa. The surety's attorney also confirmed in his June 10, 2016 declaration that defendant was issued his Mexican passport on June 3, 2016. As this information was submitted prior to the end of the appearance period, the People are not prejudiced by our consideration of the declaration submitted June 16, 2016, confirming that defendant did in fact apply for a visa.

_____
Greenwood, P.J.

WE CONCUR:


_____
 Premo, J.


_____
 Elia, J.


The People v. The North River Ins. Co. et al.
No. H044568

Filed 10/28/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>THE NORTH RIVER INSURANCE<br>COMPANY et al.,<br><br>　　Defendants and Appellants. | H044568<br>(Santa Clara County<br>Super. Ct. No. C1472577) |

BY THE COURT:

The opinion which was filed on October 1, 2019, is certified for publication.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Greenwood, P. J.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Premo, J.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Elia, J.

The written opinion which was filed on October 1, 2019, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is therefore ordered that the opinion be published in the official reports.

Dated: _____　　　　　_____
　　　　　　　　　　　　　　　　　　　　Greenwood, P. J.

Trial Court:                                  Santa Clara County Superior Court
                                              Superior Court No.: C1472577

Trial Judge:                                  The Honorable Gregory H. Saldivar


Attorney for Respondent,                      Office of the County Counsel
THE PEOPLE:                                   Marcelo Quinones
                                              James R. Williams
                                              Sara Jennifer Ponzio
                                              Hayley A. Reynolds


Attorneys for Appellants,                     Jefferson Thomas Stamp
THE NORTH RIVER INSURANCE
COMPANY et al.:


The People v. The North River Ins. Co.
H044568